RODNEY P. WRIGHT
*vs.*
LEWELLYN R. MICHAUD, ET AL.

ORONO ZONING BOARD OF APPEALS

Penobscot.   Opinion, May 22, 1964.

*Malcolm S. Stevenson,* for Plaintiff.

*Needham & Needham,* for Defendant.
   by *Amicus Curiae* and *Barnett I. Shur*

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SIDDALL, J.   On report.   The Appellant's application for a permit to "park" a mobilehome in a zone denominated as "Residential and Farming" in the zoning ordinance of the Town of Orono was denied by the Building Inspector.   Although the record does not contain a copy of the appeal or decision thereon, the stipulation of the parties shows that

the Appellant appealed from the decision of the Building Inspector, requesting a variance from the zoning ordinance to park his mobilehome in that zone. The stipulation also disclosed that the appeal was denied by the Board of Zoning Appeals, the board finding no facts to justify a variance for undue hardship.

The Enabling Act relating to municipal development is set forth as amended in R. S., 1954, Chap. 90A., Sec. 61. That part of the act which authorizes municipalities to enact zoning ordinances is contained in Par. II, Section B and reads as follows:

"B.    A zoning ordinance shall be drafted as an integral part of a comprehensive plan for municipal development, and promotion of the health, safety and general welfare of the residents of the municipality.

1.    Among other things, it shall be designed *to encourage the most appropriate use of land throughout the municipality;* to promote traffic safety; to provide safety from fire and other elements; to provide adequate light and air; to prevent overcrowding of real estate; to promote a wholesome home environment; to prevent housing development in unsanitary areas; to provide an adequate street system; *to promote the coordinated development of unbuilt areas;* to encourage the formation of community units; to provide an allotment of land area in new developments sufficient for all the requirements of community life; to conserve natural resources; and to provide for adequate public services." (Emphasis supplied.)

The zoning ordinance of the Town of Orono divides the town into the following types of use zones:

1.    Residence and Farming Zone

2. Residence A. Zone

3. Residence B. Zone

4. Business Zone

5. Industrial Zone

The Residence and Farming Zone permits among other uses single and two family dwellings subject to certain limitations relating to the size of the lot. The Board of Appeals may permit a mobile park in that zone provided it be set back 200 feet from any right of way.

The following pertinent provisions are found in the ordinance:

> "No individual trailer or mobilehome shall be allowed to locate in any zone in the Town of Orono and no trailer or mobilehome shall constitute a single resident use, whether on foundation or not."
> Sec. 1803

> Art. III, Sec. 302

> "1. Mobilehome: Mobilehome shall mean any vehicle used or so constructed as to permit its being used as a conveyance on the public streets and highways and duly licensed as such, and constructed in such a manner as will permit occupancy thereof as a dwelling or sleeping place for one or more persons, and provided with a toilet and a bathtub or shower.

> m. Mobilehome Park: Mobilehome Park shall mean a plot of ground on which two or more mobilehomes occupied for dwelling or sleeping purposes are located.

> q. Trailer: Trailer shall mean any vehicle used or so constructed as to permit its being used as a conveyance on the public streets and highways and duly licensed as such, and constructed in such a manner as will permit occupancy thereof as a dwelling or sleeping place

for one or more persons, and not provided with a toilet and a bathtub or shower."

The stipulated issues are summarized as follows:

1. Was the decision of the Orono Board of Appeals arbitrary, contrary to the weight of the evidence, and an abuse of discretion?

2. Is Section 1803 prohibiting the location of individual mobile homes anywhere in the Town of Orono, even if all the other requirements of the particular zone are fulfilled, arbitrary and discriminatory and in violation of the Constitution of the State of Maine and the Fourteenth Amendment to the Constitution of the United States?

3. Is Section 1803 in excess of the authority granted to the Town of Orono by the Enabling Act?

4. Does Section 1803 apply to mobile homes from which wheels are removed, and a form of foundation is to be constructed?

The provisions of the Enabling Act delegate broad police powers to municipalities to adopt zoning ordinances as an integral part of a comprehensive plan for municipal development and promotion of the health, safety, and general welfare of its inhabitants. The geography, the economic and industrial development, the residential necessities, the nature and extent of residential, business and industrial growth of one municipality may be entirely different from those in another municipality.

The Enabling Act does not attempt to specify the needs of any particular city or town in the field of zoning. It places no limitation upon the legislative action of a municipality in the enactment of zoning ordinances seeking to accomplish the intended purposes of the act, except those dictated by constitutional limitations. Subject to those limita-

tions, to be hereafter discussed, Section 1803 of the zoning ordinance is not in excess of the authority granted by the statute.

The Appellant contends in view of the definitions of a trailer and a mobilehome (Sec. 302, Par. (1) and (q)) that Sec. 1803 of the ordinance does not apply to a mobilehome from which wheels are removed and a foundation therefor is to be constructed. The parties stipulated that all wheels and mobile underpinnings were to be removed from the Appellant's mobilehome, and a foundation created by use of insulation sideboards around cement blocks to which the home would be attached. Sanitation was to be provided by use of a 500 gallon septic tank. An artesian well, located nearby, was to be available for fire protection. A lawn with 150 foot frontage was contemplated, and trees and shrubbery were to be planned later on the property.

Courts of other jurisdictions have differed in their treatment of mobilehomes and house trailers in ordinances of this type. In *Anstine* v. *Zoning Board of Adjustment of York Township* (Penn.) 190 A. (2nd) 712 (1963), the court concluded that the removal of the undercarriage of a mobilehome to which the wheels were attached, and the bolting of the structure to a concrete block foundation, created a *fixed* rather than a *mobile* structure. In *Lescault* v. *Zoning Board of Review of the Town of Cumberland* (R. I.) 162 A. (2nd) 807 (1960), it was held that a trailer set on a foundation of concrete blocks was a one-family dwelling and was clearly within the requirements of the zoning ordinance. *In Re Willey* (Vt.) 140 A. (2nd) 11 (1958), the trailer was mounted on cinder blocks and 2 x 3 timbers. It was connected with city sewer and water lines. The court held that the trailer was mobile when it was brought to the lot but became fixed to the realty by various connections and was properly classified as a one-family house under the zoning ordinance. On the other hand in

*Town of Manchester* v. *Phillips* (Mass.) 180 N. E. (2nd) 333 (1962), the court found that the zoning by-laws of the Town of Manchester, which limited to single residence districts detached one-family dwellings and which defined "dwelling" as a building to be used as living quarters but not including overnight camps, trailers, or mobilehomes, excluded a mobilehome type of unit from the category of dwellings, whether the unit was equipped with wheels or not.

In *Town of Brewster* v. *Sherman* (Mass.) 180 N. E. (2nd) 338 (1962), the Town of Brewster had excluded trailers from areas other than existing commercial trailer parks or camps. The trailer in question was to be transformed into an immovable single family residence permanently affixed to the land by means of a cement block foundation and connected to water, electricity and a sewerage disposal system. The court held that the prohibition of residence in any "trailer or tent" sufficiently described this type of trailer or mobile home unit whether it remained mobile or was affixed with substantial permanence to the land. See also *Astoria* v. *Nothwang* (Or.) 351 P. (2nd) 688 (1960).

These cases were decided under statutes and ordinances of various types. In none of them do we find a provision similar to Section 1803 wherein it is specifically stated that no individual trailer or mobilehome shall be allowed to locate in any zone in the Town of Orono and that neither shall constitute a single residence use, whether on a foundation or not. This provision, if constitutional, prohibits the use of individual trailers or mobilehomes, whether on a foundation or not, except that in the Residence and Farming Zone an exception is permitted upon approval of the Board of Appeals for a Mobilehome Park, provided that it be set back not less than 200 feet from any right of way.

The vital issue in this case concerns the constitutionality of Section 1803.

The constitutional guaranties relating to due process and equal protection were not intended to limit the subjects upon which the police power of a state may be exercised. *State* v. *Robb,* 100 Me. 180, 185.

Private property is held subject to the implied condition that it shall not be used for any purpose that injures or impairs the public health, morals, safety, order or welfare. *York Harbor Village Corporation* v. *Libby, et al.,* 126 Me. 537, 540.

Neither the Fourteenth Amendment of the Constitution of the United States, nor the Constitution of this State, prohibits zoning legislation. *Bolduc* v. *Pinkham, et al.,* 148 Me. 17, 19.

A classification must not be arbitrary. It must be natural and reasonable and based upon an actual difference in the classes bearing some substantial relation to the public purpose sought to be accomplished by the discrimination in rights and burdens. If a classification, though necessarily discriminatory, stands these tests, it is not a denial of equal protection of the laws. *York Village Corporation* v. *Libby, et al., supra,* at page 543.

In order to constitute a valid exercise of the police power the restriction imposed by zoning ordinances must bear a substantial relation to the public health, safety, morals or general welfare of the public. *York Harbor Village Corporation* v. *Libby, supra; Toulouse, et al.* v. *Board of Zoning Adjustment,* 147 Me. 387, 393.

In the early days of zoning, municipalities were given rather limited powers in relation thereto. *York Harbor Village Corporation* v. *Libby, supra,* was a comparatively early case in the history of zoning. The ordinance in that

case was enacted under the provisions of P. L., 1925, Chap. 209, which permitted cities of over a certain population and village corporations to restrict by ordinance or by-law buildings or camping grounds to be used for particular purposes to certain parts or zones in the city or village corporation. At that time no provision had been made for comprehensive planning for municipal development. In that case the court said:

> "It is suggested, but we think not proved, that offensiveness to some supersensitive eyes is the only respect in which camping grounds affect the public welfare.
>
> If this were true and proved, we are not prepared to say that we should hold the restrictions to be reasonable and valid, — even if one of the reactions were a depreciation in value of surrounding property.
>
> But the fact 'that considerations, of an aesthetic nature also entered into their passage would not invalidate them.' *Welch vs. Swazey*, 214 U.S. 91, 53 L. Ed. 930."

Since that decision great progress has been made in the field of zoning throughout the country, resulting in a multitude of litigated cases and many irreconcilable decisions dealing with the respective rights of the public and individual property owners relating to the interpretation and constitutionality of various enabling acts and zoning ordinances enacted pursuant thereto. With the development of the law of zoning and the inclusion in enabling acts of provisions for comprehensive planning for municipal development there has been a tendency to broaden the scope of the meaning of the term "general welfare" in determining the purposes for which zoning ordinances may be enacted.

In *Berman* v. *Parker*, 348 U. S. 26, 99 L. Ed. 27 (1954), the court in upholding the District of Columbia Redevelopment Act said:

"The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well balanced as well as carefully patrolled."

"The term public welfare has never been and cannot be precisely defined. Sometimes it has been said to include public convenience, comfort, peace and order, prosperity, and similar concepts, but not to include mere expediency." *Opinion of Justices* (Mass.) 128 N. E. (2nd) 557, 561 (1955).

See also *Vickers* v. *Township Committee of Gloucester Township* (N. J.), 172 A. (2nd) 218, 221 (1961) ; *Pierro* v. *Baxendale* (N. J.), 118 A. (2nd) 401, 407 (1955) ; *Fischer* v. *Bedminster Township* (N. J.), 93 A. (2nd) 378, 382 (1952) ; *Lionshead Lake, Inc.* v. *Wayne Township* (N. J.), 89 A. (2nd) 693, 697; *Opinion of the Justices* (Mass.), 128 N. E. (2nd) 563, 566, 567.

In considering the provisions of a comprehensive zoning ordinance the legislative body may take into consideration the nature and character of the community and of its proposed zone districts, the nature and trend of the growth of the community and that of surrounding municipalities, the areas of undeveloped property and such other factors that necessarily enter into a reasonable and well-balanced zoning ordinance. We do not feel that aesthetic considerations alone will warrant zoning restrictions against individual mobilehomes. However, we are satisfied that with the development of zoning in this state, a municipality in determining whether there should be a prohibition of individual mobilehomes throughout the municipality, may properly consider, among other factors, the impact of the use of that type of structure upon the development of the community.

174

There has been a complete revolution in the construction of mobilehomes during the last twenty-five years. Today the modern mobilehome is equipped with all the necessities and conveniences of comfortable living, compressed into an area of sufficient size to meet the needs of an increasing number of people. Such a structure, however elaborately it may be constructed or equipped, does not lose its appearance as a mobilehome by becoming affixed to the realty. Due to the necessity of travel upon the highways to its point of destination it will necessarily have a limited width. As expressed by the Massachusetts Court in the case of *Town of Manchester v. Phillips, supra:* "It looks like a trailer, has the qualities of a trailer superstructure, and has been built as a trailer." It is common knowledge that such a structure, however elaborately built or landscaped, is often detrimental to surrounding property.

The Appellant maintains that the exclusion of individual trailers within the entire township is unconstitutional. It appears from the stipulation that the mobilehome was to be placed on a one-acre lot approximately one mile from the center of the town. We infer from the stipulation of issues that all of the other requirements of the zone in which the mobilehome was to be used were met. The stipulation was short. It contained no information with reference to the nature or character of the community, or the zone districts, the trend of growth of the community, the areas of undeveloped property, or any other factual information. Therefore, we must determine whether the ordinance is reasonable, discriminatory, or arbitrary upon its face.

We are not concerned in the instant case with the question of whether mobilehomes may be prohibited in certain zones and allowed in others. The issue is whether the provision of the zoning ordinance excluding individual mobilehomes throughout the Town of Orono is valid, bearing in mind that an exception is permitted, upon approval of the

Board of Appeals, for a Mobilehome Park in the Residence and Farming Zone. The Appellant cites the case of *Village of LaGrange* v. *Leitch* (Ill.), 35 N. E. (2nd) 346 (1941). In that case the restrictions contained in the zoning ordinance were directed at the *permanent* use to which the property in the various zones was to be devoted. A trailer was used as a temporary office to sell lots. The court held that in view of the *limited* use made of the trailer it could not be said that the zoning ordinance restrictions, as applied to the trailer, bore any relation to the betterment of the health, safety or welfare of the public. Appellant also cites *Gust* v. *Township of Canton* (Mich.), 70 N. W. (2nd) 772 (1955). In that case the zoning ordinance prohibited the establishment or operation of trailer camps anywhere in the township. The court held that in determining whether prohibition of lawful use of land by zoning ordinance has real and substantial relationship to public health, safety, morals or general welfare, in absence of proof on subject, presumption of existence of such relationship and validity of ordinance is resorted to, but not when there are proofs upon which a judicial determination thereof can be made, as when the contrary is proved by competent evidence or appears on the face of the ordinance. The evidence presented showed that landowner's 33 acres of land were located in the open country, and it was not contended that establishment of trailer camps on the land *at the time* would be detrimental to the public health, etc. In holding the ordinance invalid, the court held that the test of the validity of an ordinance is not whether the prohibition may at *some time in the future* bear a real and substantial relationship to the public health, etc., but whether it *presently* does so.

We believe it was the intention of our legislature in enacting the Enabling Act to allow municipalities to plan for the future. The test is whether the prohibition is unreasonable, arbitrary, or discriminatory based upon the rea-

sonably foreseeable future development of the community. See *Duffcon Concrete Products* v. *Borough of Cresskill* (N. J.), 64 A. (2nd) 341, 350 (1949).

In *Vickers* v. *Township Committee of Gloucester Township* (N. J.), 181 A. (2nd) 129 (1961), the Township by ordinance prohibited trailer camps from the entire municipality. Claim was made that such total prohibition was illegal. The court held that a municipality need not provide a place for every use; that it need not open its borders to a use which it reasonably believes should be excluded as repugnant to its zoning scheme. After considering the evidence bearing on the issue the court upheld the ordinance.

The facts in *Napierkowski* v. *Gloucester Township* (N. J.), 150A (2nd) 481 are similar to those in the present case. In that case a zoning ordinance prohibited the use of trailers upon any tract of land within the Township of Gloucester except upon a trailer camp conducted in full compliance with the provisions of the ordinance. The court in upholding the validity of the ordinance said:

"Provisions for the utilization of trailers in licensed trailer parks as distinguished from the private lot of the trailer owner does not amount to total prohibition, but rather falls within the confines of reasonable regulation. We are cognizant of the fact that there presently are no trailer parks or camps within the township. The township is, however, not obligated to furnish trailer park facilities and so long as such parks are not totally prohibited we need not consider the question of whether the character of the township is such that even exclusion of trailer parks is permissible."

We note that in practically all of the cases in which the question of the reasonableness of a zoning ordinance is raised that extensive testimony or detailed stipulations, bearing on the relationship of the restrictions imposed to the general welfare, were presented. "In considering the

reasonableness of the particular ordinance the general situation, the setting, so to speak is material." *York Village Corporation, supra.*

Every presumption is to be made in favor of the constitutionality of an ordinance passed in pursuance of statutory authority. It will not be declared unconstitutional without clear and irrefutable evidence that it infringes the paramount law. *Donahue* v. *City of Portland,* 137 Me. 83. If it does not appear unreasonable on its face, the objecting party must produce evidence to show that it is in fact unreasonable in its operation. *State* v. *Small,* 126 Me. 235, 237. "The agreed statement in the case contains nothing but the by-law itself bearing on this point. It, therefore, becomes a question of whether upon its face it is unreasonable." *State* v. *Small, supra.*

The principle that zoning ordinances are presumed to be constitutional is one almost universally recognized in jurisdictions throughout the United States. The Law of Zoning and Planning, Rathkopf, Vol. 1, page 21-1 and cases cited.

In the instant case there was no prohibition of mobilehomes throughout the municipality. The use of mobilehomes in Mobilehome Parks was permitted as an exception in the Residence and Farming Zone, upon approval of the Board of Appeals. We are not called upon to determine whether a municipality may constitutionally prohibit the use of mobilehomes throughout its territory. The zoning ordinance is presumed to be valid. No evidence was presented, and we find nothing in the stipulation filed or in the ordinance itself which would give us reason to find that Section 1803, taken as a part of the entire ordinance, is unreasonable, arbitrary or discriminatory.

The Appellant claims that the decision of the Board of Appeals rejecting a variance request was arbitrary, con-

178

trary to the weight of the evidence and an abuse of discretion.

Section 1102 (a) (2) of the ordinance provides that the Board of Appeals may grant variances from the strict letter of the ordinance in cases of practical difficulty or undue hardship, provided there is no substantial departure from the intent of the ordinances. This authority of the Board of Appeals is limited by Sec. 301 (s) which authorizes a variance "only for height, area, and size of structure or size of yards and open spaces," and provides that the establishment or expansion of a use otherwise prohibited shall not be allowed as a variance.

In view of the fact that the use of individual mobilehomes were prohibited by Section 1803 of the ordinance the Board of Appeals had no jurisdiction to grant the requested variance.

The entry will be

*Appeal denied.*