**Gertrude S. CLARDY and Benjamin
H. Clardy**

v.

**TOWN OF LIVERMORE.**

Supreme Judicial Court of Maine.

July 12, 1979.

Linnell, Choate & Webber by G. Curtis Webber, Auburn (orally), for plaintiffs.

Isaacson, Isaacson & Hark by Robert S. Hark (orally), Philip M. Isaacson, Lewiston, for defendant.

Before McKUSICK, C. J., POMEROY, WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

Plaintiffs Benjamin H. Clardy and Gertrude S. Clardy, owners of a lot of land in the Town of Livermore, Maine, instituted an action against the Town in the Superior Court (Androscoggin County) to prevent the Town from enforcing against them, and their land, its ordinance prescribing a mini-

mum frontage as a prerequisite for the erection, or placing, of a building on any parcel of land in the Town. After the pleadings were completed, the plaintiffs moved for summary judgment in their favor. The presiding Justice granted the motion and ordered entry of judgment in favor of the plaintiffs. The Town has appealed from that adverse judgment, as entered.

We deny the Town's appeal and affirm the judgment of the Superior Court, but, as the ensuing discussion shows, we sustain the judgment on a ground different from that relied on by the presiding Justice.

In 1962, plaintiffs acquired ownership of a parcel of land in the Town of Livermore, 80,000 square feet in total area and having a frontage of 100 feet on a road known as Route 4. In 1969, the Town enacted a building code ordinance, one provision of which prohibited the owner of any lot with less than 100 feet of lot frontage from erecting, or moving, a building upon it. By an amendment in 1971 the required minimum frontage was increased to 150 feet.

On January 6, 1978, plaintiffs, acting under a permit previously issued to them, moved an unfinished building onto their lot with intention to convert it into a single family residence. Soon thereafter, they met with resistance from the Selectmen of the Town who refused to honor plaintiffs' building permit, demanding that plaintiffs again make an application either to have the existing permit reconfirmed or to be issued a new one. These initial difficulties, as well as some later encountered when plaintiffs sought other relief from officials of the Town, led plaintiffs to institute the instant action to prevent the Town from enforcing the ordinance, as amended in 1971, against them and the parcel of land owned by them since 1962.[1]

In their motion for summary judgment plaintiffs asserted alternative grounds. They claimed, first, that the ordinance was

unlawful as an attempt to establish "building lines"; thereby it violated the mandate of *Town of Waterboro v. Lessard*, Me., 287 A.2d 126 (1972) which held invalid, as beyond the ambit of any powers the Legislature had *then* delegated to municipalities, the enactment of an ordinance which purportedly prescribed "set-back" restrictions without being an exercise of the Town's *zoning* powers. Second, plaintiffs contended that even if the ordinance might be regarded as a valid exercise of the Town's "police power", enforcement of it to prevent them from placing a building to be used for residential purposes on land that they acquired as owners many years before the ordinance was enacted, or amended, would violate federal and State constitutional safeguards against governmental "taking" of property without payment of just compensation.[2]

The Superior Court addressed only the former of plaintiffs' two contentions, awarding summary judgment in their favor because

> "the minimum frontage requirement contained in the Defendant's Building Code is invalid"

as

> "an attempt to adopt a zoning restriction without following the statutory prerequisites for the adoption of a zoning ordinance . . . [citing *Lessard, supra*]."

On appeal, the Town claims error in the Superior Court's judgment on three grounds. First, the Town contends that *Lessard* is distinguishable as involving a set-back regulation. Acknowledging that such a provision in a municipal building code could properly be regarded in the circumstances of *Lessard* as an attempted exercise of the power to "zone", the Town says that the *minimum-frontage* regulation involved here should not be so considered because it is more akin to traditional "police power" interests in public safety.

---

1. The initial grant of summary judgment was amended to include a denial of the injunction defendant Town sought by way of counterclaim, to order plaintiffs to remove the building.

2. U.S.Const. Amend. V; Me.Const. art. I, §§ 6, 21.

Second, the Town maintains that the advent in Maine of municipal "home-rule" prior to the date of the amendment of the ordinance at issue, as effected by constitutional amendment and accompanying statute,[3] rendered *Lessard* inapplicable to this case. *Lessard* was predicated on the proposition that municipalities have only such powers as are expressly delegated to them by the Legislature or as are strictly necessary to the full effectuation of such expressly delegated powers.[4] Municipal home-rule reverses this prior foundational doctrine; under home-rule, without need for additional legislative enabling action, every municipality is taken to possess, inherently, all powers the Legislature could validly confer, except such as the Legislature has otherwise denied either expressly or by clear implication.

Lastly, and as an elaboration of its second contention that home-rule effectively deprived *Lessard* of precedential force in the case at bar, defendant Town points to the Legislature's change of approach, after the advent of home-rule, in addressing the zoning power of municipalities. Thus, says the Town, in P.L.1971, c. 455, entitled "An Act to Make Municipal Planning Legislation Consistent with Home Rule", the Legislature avoided use of *enabling* language, thereby clarifying that zoning powers inhered in the municipality under home-rule, and the Legislature's role was more in the nature of "regulating" from time to time the manner of the Town's exercise of its power.[5] In this regard, too, the Town argues that the restrictive thrust of this 1971 enactment which replaced the former zoning enabling legislation, and which forbids "zoning . . . pursuant to the home rule power" in the absence of a comprehensive plan, 30 M.R.S.A. § 4962 (Supp.1973), became itself limited by the operation of its own subsection (H), added in 1973 (P.L. 1973, c. 536). Since subsection (H) of 30 M.R.S.A. § 4962 defines "zoning" as the "division of a municipality into districts and the prescription and reasonable application of different regulations in each district", *cf. In re Spring Valley Development*, Me., 300 A.2d 736, 753–54 (1973), defendant Town maintains that under municipal home-rule an ordinance such as that involved here plainly should not be looked upon as a purported exercise of zoning power and as such held unlawful. Rather, it should be viewed as an exercise of "land-use" regulatory power deemed to be possessed by the municipality as an incident of home-rule without need for special enabling legislation, so long as the Legislature has not otherwise, in express terms or by clear implication, denied the municipality such powers.

We agree with defendant Town that the issues it raises in this case are important as portents of many, and major, transformations that have been wrought by the advent of municipal home-rule in the legal framework which has governed, for so long, the interrelations of State and municipal authority. Nevertheless, despite the importance of the issues, we cannot ignore the point that the questions the Town raises require decision in this case only if, antecedently, the amended ordinance under consideration is interpreted as applicable to plaintiffs' land, ownership of which was acquired prior to the effective date of the ordinance, and *only if* the amended ordinance is interpreted to have applicability to bar a use which was available to plaintiffs under the terms of the ordinance as it read prior to being amended.

Thus, the foundational issue we must decide, before it becomes appropriate for us to address any other issues, is whether the ordinance, as amended, applies to plaintiffs and their land so as to render unlawful that use of the land which plaintiffs have here undertaken. This issue of ordinance interpretation concomitantly generates an issue of constitutional dimension which is plainly arguable: whether the amended ordinance,

---

3. Me.Const. art. VIII, pt. 2, § 1; 30 M.R.S.A. § 1917 (1978).

4. See *Town of Windham v. LaPointe*, Me., 308 A.2d 286, 290 (1973).

5. The Town characterizes the present statute as "regulatory." *Cf.* 30 M.R.S.A. § 4953 (1964) with 30 M.R.S.A. § 4962 (1978).

interpreted as the Town would have us read it, produces in the instant circumstances a governmental "taking" of property without just compensation, in violation of the Federal and State Constitutions. See, n.2, *supra*.

In this context it is a cardinal rule of appropriate judicial functioning that a court should avoid decision of a constitutional question where the legislative enactment that occasions the question is fairly open to an interpretation making decision of it unnecessary. See, e. g., *State v. Good*, Me., 308 A.2d 576, 579 (1973); *Morris v. Goss*, 147 Me. 89, 93, 83 A.2d 556 (1951).

With this rule in mind, we find that to interpret the amended ordinance as the Town contends would deprive plaintiffs to a substantial extent of the usual incidents of land ownership. Under the Town's interpretation, plaintiffs would be compelled to hold the parcel of land they acquired in 1962 under the condition that no building may be placed upon it. This may well be a use of government power in a manner that

> " 'deprives an owner [of land] of one of its essential attributes, destroys its value, restricts or interrupts its common necessary, or profitable use, . . . or imposes conditions upon the right to hold or use it and thereby seriously impairs its value'." *State v. Johnson*, Me., 265 A.2d 711, 715 (1970).

As our discussion in *Johnson, supra*, revealed, the imposition of such burdensome conditions could be the equivalent of an uncompensated "taking." We are mindful, too, of the potentially analogous point in the area of zoning that because of the

> "doubtful constitutionality of compelling immediate cessation of nonconforming uses"

a zoning ordinance will, ordinarily, to assure its constitutionality, provide expressly for the continuation of these uses. *Inhabitants of Town of Windham v. Sprague*, Me., 219 A.2d 548, 550 (1966). See also *Graves v. Bloomfield Planning Board*, 97 N.J.Super. 306, 235 A.2d 51, 56 (1967); 2 Rathkopf, *Law of Zoning and Planning*, 32–34 (4th ed. 1977). In the absence of an express provision of this kind, such ordinances are usually construed to have *only prospective* effect. 8A McQuillin, *Municipal Corporations* 20 (3d ed. 1976). All of this accords with our own "strictly followed" general rule that

> " 'barren of  *  *  *  express commands or convincing implications  *  *  *  statutes will be considered to have a prospective operation only.' " *Langley v. Home Indemnity Co.*, Me., 272 A.2d 740, 747 (1971), quoting *Miller v. Fallon*, 134 Me. 145, 148, 183 A. 416, 417 (1936).

We decide, then, that far from qualifying as one whose

> " 'terms are so strong, clear, and imperative that no other meaning can be annexed to them . . .' ", *id.* at 746–47, quoting *In re Guilford Water Co.*, 118 Me. 367, 375, 108 A. 446, 451 (1919),

this ordinance, as amended, which is silent in regard to an intendment that it be applicable to parcels of land ownership of which was acquired prior to the effective date of the ordinance, or that it be applicable to bar a use previously available under its original terms, must be construed as limited in these regards to *only prospective* applicability.

The amended ordinance in question, therefore, may not validly be applied to force the removal of the building presently situated on plaintiffs' land, or to prevent, or impair, plaintiffs' continued use of the building as so situated.

The entry is:

*Appeal denied.*

*Judgment affirmed.*

DELAHANTY, GODFREY and NICHOLS, JJ., did not sit.