**Hallie W. WARREN and Laska M. Warren** [1]

v.

**MUNICIPAL OFFICERS OF the TOWN OF GORHAM, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 18, 1980.

Decided July 6, 1981.

---

1. This action was originally brought by Hallie W. Warren and Laska M. Warren. It has indirectly come to the attention of the Court that plaintiff Hallie W. Warren may have died since the oral argument. No suggestion of death has been made on the record under M.R.Civ.P. 25(a)(2). We therefore treat the case, for purposes of our decision, as if both the plaintiffs remain as parties. We do remand the case to Superior Court with instructions to act on any suggestion of death that may be made on the record.

The members of the Zoning Board of Appeals of the Town of Gorham were named as defendants below. We have not named them in the caption because they were not proper parties before the Superior Court. *Inhabitants of Town of Boothbay Harbor v. Russell*, Me., 410 A.2d 554, 559–61 (1980).

Smith & Elliott, P. A., Roger S. Elliott (orally), Karen B. Lovell, Saco, for plaintiffs.

James A. McKenna, Asst. Atty. Gen. Consumer and Antitrust Division, Augusta, for State of Maine.

Jensen, Baird, Gardner & Henry by Nicholas S. Nadzo (orally), John F. Sheehan, Kenneth M. Cole, III, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

CARTER, Justice.

The defendants appeal from a judgment of the Superior Court (Cumberland County) enjoining them from applying local zoning ordinances in such a manner as to prevent the plaintiffs, Hallie and Laska Warren, from installing their modular home on their private lot. On the basis of the record before us, we reverse the decision below.

In June 1978, the plaintiffs were denied a building permit to place on their property a single-unit "modular home," *i. e.*, transportable single-unit housing not constructed on a permanent chassis. The plaintiffs' land is located in a Farm and Rural Residential District under Gorham's Land Use and Development Code ("Zoning Ordinance"). The Zoning Ordinance was amended in 1975 to define "mobile homes" so as to include all single-unit dwelling units designed for transportation on streets after fabrication; thus, single-unit modular homes like the plaintiffs' homes,[2] but not multiple-unit modular homes, are within the Zoning Ordinance's definition of "mobile homes." The Zoning Ordinance does not permit "mobile homes" to be located in Farm and Rural Residential Districts except within mobile home parks subject to the provisions of Gorham's Mobile Home Park Ordinance. The plaintiffs' land is not within a mobile home park. The decision to refuse to grant a building permit was upheld by the Zoning Board of Appeals in July, 1978.

In 1972, a Comprehensive Plan for the Town of Gorham was completed. It noted that in the past mobile homes had generally deteriorated more rapidly than conventional housing, that recent improvements in the quality of modular housing had occurred, but that care should be taken to avoid low standards in their installation. The Plan also noted that Gorham was then vulnerable to a proliferation of low cost development threatening property tax revenues.

In 1976, Gorham's Town Council adopted a policy statement on mobile homes which noted that mobile homes have a detrimental effect on neighboring properties.

Under the Manufactured Housing Act, 10 M.R.S.A. § 9002(11) (1980), a "modular home" is defined in part as "a structure which is a type of manufactured housing, transportable in one or more sections, which is not constructed on a permanent chassis . . . ." *See also* Regulation 3.10 adopted in April 1978 pursuant to 10 M.R.S.A. § 9005.

In the Industrialized Housing Law, 30 M.R.S.A. §§ 4771–4783 (1978), "mobile home" is defined in part as "a structure, transportable in one or more sections, . . . which is built on a permanent chassis . . . ." 30 M.R.S.A. § 4773(8); *see also* 10 M.R.S.A. § 9002(10). Thus, under the definitions employed in these laws, the plaintiffs' home is a "modular home."

The plaintiffs challenged Gorham's Zoning Ordinance prohibiting mobile homes from being located outside of mobile home parks in a Farm and Rural Residential District on three grounds: 1) that Gorham's ordinances entirely exclude single-unit modular homes; 2) that Gorham's Zoning Ordinance violates due process; and 3) that Gorham's Zoning Ordinance denies the plaintiffs equal protection of the laws. The parties have stipulated that single-unit modular homes and mobile homes look alike, and are constructed alike except that modular homes have no permanent chassis, tongue or hitch.

## I.

Before Gorham's Zoning Ordinance was amended in 1975, it and Gorham's Mobile Home Park Ordinance defined "mobile home" in exactly the same terms. In 1975, the Zoning Ordinance's definition of "mobile home" was amended to include single-unit modular homes; the Mobile Home Park Ordinance was not amended. Therefore, while the Zoning Ordinance limits single-unit modular homes to mobile home parks, the Mobile Home Park Ordinance, on its face, limits occupancy in mobile home parks to *its* definition of mobile homes, thereby effectively excluding single-unit modular homes from locating anywhere in Gorham. However, the parties have stipulated that the ordinances, since their inception, have been interpreted and enforced to require and to permit single-unit modular homes to be located in mobile home parks.

---

**2.** The parties have stipulated that the plaintiffs' home is a "mobile home" as that term is

defined in the Zoning Ordinance.

■ The plaintiffs have raised this issue for the first time on appeal. Generally, we treat such an issue as waived. *Emerson v. Ham*, Me., 411 A.2d 687, 690 (1980). Furthermore, we discern no basis for finding that the plaintiffs have standing to raise this issue. The plaintiffs do not allege that they have attempted to locate their home in a mobile home park, that they have any intention of doing so, or even that they have been deterred from attempting to do so by the language of the Mobile Home Park Ordinance. To the contrary, the plaintiffs have stipulated that since its effective date the Mobile Home Park Ordinance has been consistently interpreted and enforced as *requiring* that single-unit modular homes be located in mobile home parks. *Cf. Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (No justiciable dispute where no realistic fear exists that a statute would be enforced against plaintiffs.) "A plaintiff who challenges a statute must demonstrate a *realistic* danger of sustaining a direct injury *as a result of* the statute's operation or enforcement." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (emphasis added). Here, the plaintiffs have not even alleged an intent to locate in a mobile home park, much less demonstrated any danger that the Mobile Home Park Ordinance would be enforced to prevent them from doing so. The plaintiffs have failed to allege that they have suffered or will suffer any direct, personal injury as a result of the operation or enforcement of the Mobile Home Park Ordinance. *See Fitzgerald v. Baxter State Park Authority*, Me., 385 A.2d 189, 196–97 (1978).

We distinguish the case of *Town of Windham v. LaPointe*, Me., 308 A.2d 286 (1973). There, the Town passed a single ordinance restricting house trailers to approved trailer parks, and setting forth various requirements to be met in order to establish a house trailer park. The defendant placed a house trailer on his own property. The Town sued for an injunction to force its removal. We noted that the Town intended, as part of a comprehensive plan of regulating house trailers, to both prohibit absolutely their location anywhere outside approved trailer parks, and to regulate the location and establishment of such trailer parks. "Both objectives were an integral and essential part of a single plan." *Id.* at 291. We held that the *interlocking structure* of the Windham ordinance so affected the defendant's use of his property as to give him standing to test, on its face, the constitutionality of the main portion of the two-pronged ordinance, including that part which sets the requirements for the establishment of trailer parks which he claimed was unconstitutional. In the instant case, however, if we were to strike down that part of the Mobile Home Park Ordinance which, on its face, excludes single-unit modular homes from mobile home parks, the result would *not* be to also strike down all zoning restrictions on single-unit modular homes, but rather to permit the location of single-unit modular homes in mobile home parks. Thus, an examination of the Mobile Home Park Ordinance would have no effect upon the plaintiffs' use of their land, unlike the situation in *LaPointe*.

## II.

■ It is not disputed that Gorham has the authority to promulgate zoning ordinances, as long as the ordinances do not violate constitutional guaranties.[3] Due process requires that a zoning ordinance bear a reasonable relationship to the public health, safety, morals or general welfare. *Barnard v. Zoning Board of Appeals of Town of Yarmouth*, Me., 313 A.2d 741, 744 (1974). The ordinance must not be unreasonable, arbitrary, nor discriminatory based upon the reasonably foreseeable future development of the community. *Id.*

■ A zoning ordinance passed in pursuance of statutory authority is presumed

---

**3.** Municipalities are granted Home Rule powers by Art. VIII, Part Second § 1 of the Maine Constitution and enabling legislation (30 M.R. S.A. §§ 1911 *et seq.*). Zoning powers are specifically dealt with at 30 M.R.S.A. §§ 4961 *et seq.*

to be constitutional. *City of Saco v. Tweedie*, Me., 314 A.2d 135, 136 (1974). The burden is upon the party attacking its constitutionality to show by clear and irrefutable evidence that it infringes the paramount law. *Id.* Moreover, the burden is on the same party to establish, in a facial attack upon a statute, the complete absence of *any* state of facts which would support the need for the municipal ordinance. *See Inhabitants of Town of Boothbay v. National Advertising Co.*, Me., 347 A.2d 419, 422 (1975). The plaintiffs argue, and the Superior Court held, that this presumption is "neutralized" in this case by a legislatively-created "presumption" in favor of the use of modular homes; thus, it is argued, the burden is shifted to the Town to justify any restrictions it places on the location of modular homes. We disagree.

The policy provisions of both the Industrialized Housing Law, 30 M.R.S.A. §§ 4771 *et seq.*, and the Manufactured Housing Act, 10 M.R.S.A. §§ 9001 *et seq.*, state that increased use of manufactured housing is in the best interest of the general welfare, and that uniform building codes are necessary within the State to reduce costs and increase usage of manufactured housing. A uniform building code for manufactured housing throughout the State permits a manufacturer to build standardized, "assembly-line" homes which can be utilized anywhere in Maine, while at the same time setting minimum standards designed to protect consumers. Yet, legislative concern for uniform construction standards is not *per se* incompatible with the existence of local land-use regulations. Indeed, Rule 2.2.1 adopted in April 1978 by the Manufactured Housing Board and Rule 2.2.1 adopted in September 1974 by the Maine State Housing Authority provide that the regulations promulgated to carry out the objectives of the Manufactured Housing Act and the Industrialized Housing Law do not affect local requirements for land-use zoning. Thus, the plaintiffs had the burden of rebutting the presumption of constitutionality.

■ The Superior Court found four reasons in the record supporting the zoning ordinance: 1) aesthetic considerations; 2) deterioration in the value of neighboring properties; 3) adverse impact on the Town's tax base; and 4) rapid deterioration of mobile homes. Such reasons do properly relate to the public health, safety, morals or general welfare. *Barnard v. Zoning Board of Appeals of Town of Yarmouth*, Me., 313 A.2d 741, 745 (1974) (property values); *Wright v. Michaud*, 160 Me. 164, 173, 200 A.2d 543, 548 (1964) (public welfare includes the value of beauty, though aesthetic considerations alone will not warrant zoning restrictions against individual mobile homes). The plaintiffs contend that the record contains no written reports or studies which justify a generalized belief that mobile homes cause deterioration of the economic value of abutting property, harm the tax base, or deteriorate rapidly. That argument is based upon a misunderstanding of the placement of the burden of proof in this case. The plaintiffs failed to offer *affirmative* evidence to prove that mobile homes do not cause deterioration of abutting property values, do not harm the tax base, and do not rapidly deteriorate. The presumption of constitutionality would be fragile indeed if it were to give way in the absence of any evidence tending to refute it.[4] Since the plaintiffs did not establish the absence of any state of facts supporting the need for the Zoning Ordinance, and did not produce the clear and irrefutable evidence necessary to rebut the presumption

---

4. In fact, the record does contain a study, entitled "Land Use Development Patterns and Trends: Policy Recommendations," prepared for the Gorham Planning Board in 1972. This study does provide support for the Town's argument that mobile homes deteriorate rapidly. The Superior Court noted that this study was directed at mobile homes, not single-unit modular homes. However, the parties have stipulated that mobile homes and single-unit modular homes look alike, and are essentially constructed alike. In the absence of evidence in the record to the contrary, we must treat mobile homes and single-unit modular homes alike. Thus, on this record, the study's conclusions with respect to mobile homes are transferable to single-unit modular homes.

that the Zoning Ordinance bears a reasonable relationship to the public health, safety, morals or general welfare, the force of the presumption must be given full effect on appeal. *See City of Saco v. Tweedie*, Me., 314 A.2d 135, 136 (1974).

### III.

■ The plaintiff argues that the Zoning Ordinance is unconstitutional on its face in that it irrationally treats single-unit modular homes and mobile homes differently than it treats multiple-unit modular homes.[5] The plaintiff has the burden of proof. A zoning ordinance on such a facial attack, will not be found to violate equal protection if facts may reasonably be conceived to justify it. *See Union Mutual Life Insurance Co. v. Emerson*, Me., 345 A.2d 504, 507 (1975).

In *Wright v. Michaud*, 160 Me. 164, 173, 200 A.2d 543, 548 (1964), we said:

In considering the provisions of a comprehensive zoning ordinance the legislative body may take into consideration the nature and character of the community and its proposed zone districts, the nature and trend of the growth of the community and that of surrounding municipalities, the areas of undeveloped property and such other factors that necessarily enter into a reasonable and well-balanced zoning ordinance.

In developing zoning for mobile homes, a municipality "may properly consider, among other factors, the impact of the use of that type of structure upon the development of the community." *Id.*

■ A single-unit modular home must be transportable over highways. This need dictates, within rather narrow parameters, its size and shape. These characteristics bear not only upon its aesthetic appearance but also upon its "in place" value, its suitability for a variety of functions, and its flexibility in terms of neighborhood development where large numbers of such units are located within a community.

Multiple-unit modular homes are so constructed as to allow varying configurations. They can be employed in multiple family dwellings of any desired size and appearance. Multiple-unit modular construction is suitable for a variety of commercial and service functions. Entire neighborhoods can be constructed that are not significantly different in appearance, value, or social purpose than traditional neighborhoods. Any mix or single and multiple family dwelling units desired from a community development view may be achieved. Thus, multiple unit construction lends itself to flexibility in neighborhood development.

Such is not the case with single-unit modular construction. The limited size and shape of such units must result in a comparative lack of flexibility when their extensive use in significant numbers is contemplated.

This distinction strikes to the central purpose of all residential zoning; to control and shape the development of the community as a whole by the development of zones or neighborhoods that reflect individualization of properties, avoidance of detrimentally inconsistent property values within zones and a desirable harmony of appearance by whatever aesthetic values are chosen.[6] A

---

5. The plaintiffs also argue that it is irrational to treat mobile homes and single-unit modular homes alike. With the purposes of the Zoning Ordinance (aesthetic considerations, maintenance or abutting property values, and rapid deterioration of mobile homes) in mind, we believe this argument must fail in light of the stipulations that mobile homes and single-unit modular homes look alike and are essentially built alike.

We do not perceive the plaintiffs to be arguing that the Zoning Ordinance is unconstitutional as applied to them. Indeed, the plaintiffs concede that their modular home fits within the

definition of "mobile home" in the Zoning Ordinance.

6. In *Wright v. Michaud*, 160 Me. 164, 200 A.2d 543 (1964), we noted that aesthetic considerations alone will not warrant zoning restrictions against individual mobile homes. We went on to say, however, that a mobile home, *however elaborately built or landscaped*, is often detrimental to surrounding property. We do not read *Wright* as prohibiting zoning restrictions based upon a combination of aesthetic considerations and resulting decreases in abutting property values.

sizable neighborhood of single-unit modular dwellings will necessarily permit a far narrower range of alternatives with respect to each of these considerations than will a similar neighborhood composed of multiple units. Additionally, the unrestricted placement of single-units in multiple-unit neighborhoods may conceivably operate detrimentally to the ability to achieve development goals based on a weighting of such considerations.

The extended range of developmental flexibility of multiple-unit modular construction is therefore a conceivable rational basis for distinguishing between the two types of modular construction in regulating their location under a zoning ordinance. This flexibility is the very essence of rationally based zoning programs. That communities should be deprived of its benefits in formulating these programs would unduly constrict a municipality's ability to zone effectively for developmental purposes, taking full advantage of the utilization of a form of housing which the Legislature has determined to be highly desirable. The benefits of this flexibility may, with proper foresight, yield advantages in planning a workable and harmonious mix of neighborhoods, reflecting desirable variations and consistencies of appearance and property values. When the ordinance is considered in this light, we conclude that the plaintiffs did not present evidence sufficient to rebut the presumption of constitutionality. Therefore, the presumption of constitutionality must be given full effect on appeal. *See City of Saco v. Tweedie*, Me., 314 A.2d 135, 136 (1974).

We recognize, as vulnerable to attack, the basic assumption that mobile homes are inferior to more conventional housing. *See, e. g.*, Delogu, *The Misuse of Land Use Control Powers Must End: Suggestions for Legislative and Judicial Responses*, 32 Me.L. Rev. 29 (1980). We note that the Legislature is now actively reviewing the necessity for state legislation concerning the siting of manufactured housing. *See* Resolves c. 34 (June 5, 1981) (L.D. 996). However, in view of the presumption of constitutionality applicable to Gorham's Zoning Ordinance, and

in light of the posture of the record in this case, we reverse the decision of the Superior Court.

The entry is:

Judgment reversed.

Case remanded to the Superior Court for entry of judgment in favor of defendants and for action to comply with M.R.Civ.P. 25(a) on request of any party.

All concurring.