Kenneth STEWART et al.

v.

**INHABITANTS OF TOWN OF DURHAM et al.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1982.

Decided Oct. 14, 1982.

The provisions of this ordinance shall not apply to occupied mobile homes lawfully existing within the Town of Durham . . . nor shall it apply to the replacement of lawfully existing mobile homes.

Appellees Kenneth and Nancy Stewart own a piece of land in Durham. Their lot is not within a mobile home park. In August, 1980, they applied for a building permit to move their mobile home onto their Durham land from its location in a Brunswick mobile home park. Their application was denied by Durham's building inspector and then by the Town's zoning board of appeals. The Stewarts thereupon sought relief in the Superior Court. The evidence produced there shows that ever since its enactment, the ordinance's grandfather clause has been applied broadly by the Durham selectmen and building inspector. Specifically, those town officials have interpreted the clause to allow the owner of a mobile home lawfully in Durham before the ordinance took effect 1) to keep his home where it was, 2) to replace it with a new mobile home on the same lot, 3) to sell it, together with the lot, to a new owner, or 4) to move it to another lot in Durham, not previously the site of a mobile home (providing that the new location otherwise met the requirements for residential use).

Before the Superior Court the Stewarts argued, among other things, that Durham's mobile home ordinance is inconsistent with the Town's comprehensive plan[2] and violative of the equal protection and due process clauses of the United States and Maine Constitutions.[3] The court rejected their first argument, but held that the broadly construed grandfather clause rendered the ordinance unconstitutional, and enjoined the Town from enforcing the ordinance so as to prevent the Stewarts from moving their mobile home onto their lot in Durham. The Town has appealed the Superior

Sayer & Golden, Michael Sayer (orally), Richard Golden, Lisbon Falls, for plaintiffs.

Linnell, Choate & Webber, G. Curtis Webber (orally), Auburn, for defendants.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

Defendant Town of Durham[1] appeals from an order of the Superior Court (Androscoggin County) enjoining the Town from enforcing its mobile home ordinance against the Stewarts. The Superior Court held that the ordinance, which excludes from the Town all mobile homes except those located in duly licensed mobile home parks, is unconstitutional in its entirety because of its broad "grandfather clause." In so doing, the Superior Court accepted the interpretation of that grandfather clause adopted by Durham officials. We conclude that the proper legal construction of the grandfather clause saves it and the rest of the ordinance from constitutional attack, and we therefore reverse the Superior Court's order.

In 1972, the Town of Durham adopted a comprehensive plan as a guide to the community's future development. At its annual town meeting, held on March 6, 1976, the Town adopted a mobile home ordinance. Section 6(c) of that ordinance states, "No person shall maintain and occupy a mobile home in the Town of Durham except in a duly licensed mobile home park." Section 4 of the ordinance, its grandfather clause, provides:

1. The building inspector and the members of the Durham Zoning Board of Appeals also were named as defendants and now join in the Town's appeal.

2. 30 M.R.S.A. § 4962(1)(A) (1978) requires that a town's zoning ordinances be "pursuant to and consistent with a comprehensive plan adopted by its legislative body."

3. U.S. Const. amend. XIV; Me. Const. art. I, § 6–A.

Court's decision on the constitutional issue, and the Stewarts have cross-appealed on the comprehensive plan question. We sustain the Town's appeal and deny the Stewarts' cross-appeal.

### I. *Construing the Ordinance*

In holding that the Durham mobile home ordinance is unconstitutional because of the breadth of its grandfather clause, the Superior Court implicitly accepted the interpretation given to that clause by Durham's selectmen and building inspector. In so doing, the court made an error of law. *See LaPointe v. City of Saco,* Me., 419 A.2d 1013, 1015 (1980) (meaning of terms in a zoning ordinance is a question of law for the court). It is true that contemporaneous construction of a law by its drafters or administrators is not to be lightly disregarded by a court. *See Kelley v. Halperin,* Me., 390 A.2d 1078, 1080 (1978). However, against that traditional rule of construction we must weigh two countervailing considerations: the fact that the plain language of the grandfather clause and the context in which it must be read support a narrower construction of its terms more readily than the expanded interpretation accepted by the Superior Court, and our conclusion that a narrow construction will enable us to avoid the constitutional difficulties identified below. An administrative construction of an ordinance or statute is never conclusive upon a court. *See State v. York Utilities Co.,* 142 Me. 40, 44, 45 A.2d 634, 635–36 (1946). We decline to adopt the administrative construction put upon the grandfather clause in Durham's mobile home ordinance.

The grandfather clause exempts "occupied mobile homes lawfully existing within the Town of Durham" and the "replacement" of such homes from the requirement that mobile homes be confined to licensed mobile home parks. An "occupied mobile home" is a home actually being lived in—a home "settled" on a given piece of land, with the usual water, sewer, and electrical hook-ups. An "occupied mobile home," in fact, is best thought of as being integrated with the lot on which it is located. Words used in a statute are to be given their plain and natural meaning whenever possible. *See Town of Arundel v. Swain,* Me., 374 A.2d 317, 320 (1977). The terms used in the Durham grandfather clause, given their plain and natural meaning, call for an interpretation significantly narrower than that accepted by the Superior Court. The wording of the clause suggests that the owner of a mobile home occupied lawfully in Durham before the ordinance took effect should be allowed to keep it, to replace it with a new mobile home on the same lot, or to transfer it, together with its lot, to a new owner (as it is the home itself, not the owner, that is "grandfathered"), but *not* to move it to another lot within Durham's borders.

Looking beyond the wording of the grandfather clause itself, we note that a narrow construction of the clause is consistent with the overall purpose of the mobile home ordinance, while the broad reading tends to undermine that purpose. Applied as the Durham officials have applied it, the clause virtually guarantees that the number of mobile homes in Durham outside mobile home parks will never drop below the number of nonconforming uses in 1976, when the ordinance was enacted. Moreover, if all of the grandfathered mobile homes could without restriction be moved about within the geographical limits of Durham, there is a potential for further erosion of property values and of the Town's aesthetic character. Those possible consequences run counter to the acknowledged goals of the ordinance as a whole,[4] to preserve the aesthetic character of Durham and to protect property values. Each section of an ordinance should be read so as to harmonize with the entire legislative scheme of which it is a part. *See Seven Islands Land Co. v. Maine Land Use Regulation Commission,* Me., 450 A.2d 475, 480 (1982). Construing the grandfather clause to permit the maintenance, replacement, or sale of existing mobile homes only at their original locations in Durham best conforms to the objective of the ordinance as a whole to restrict mobile

---

4. See the discussion in part II of this opinion.

homes to mobile home parks after March 6, 1976.

■ We adopt this construction of the grandfather clause not only because it is the most plausible reading of the clause but also because it avoids the serious constitutional questions presented by the town officials' interpretation. "Courts must construe legislative enactments so as to avoid a danger of unconstitutionality .... The cardinal principle of statutory construction is to save, not to destroy." *State v. Davenport,* Me., 326 A.2d 1, 5–6 (1974). *See also* 82 Am.Jur.2d, *Zoning & Planning* § 68, at 500 (1976) ("where a zoning ordinance is susceptible of two different reasonable constructions, one of which will render the ordinance valid and the other render it invalid, the court will adopt the one which renders it valid"). This principle of statutory construction is fully consistent with the general rule that the courts are to give effect to legislative intent, *see State v. Hussey,* Me., 381 A.2d 665, 666 (1978), as it cannot be assumed that the drafters of the Durham mobile home ordinance intended their product to violate the constitution. In *Clardy v. Town of Livermore,* Me., 403 A.2d 779 (1979), we interpreted a Livermore ordinance differently from the way it had been interpreted by town officials in order to avoid the decision of a constitutional question altogether. Here, we adopt a different construction in order to avoid a close constitutional question, although we cannot entirely escape a discussion of the due process and equal protection issues raised by the Stewarts.

## II. *The Constitutional Questions*

■ Properly construed, the grandfather clause to Durham's mobile home ordinance easily passes constitutional muster.

Under the due process clauses of the federal and state constitutions, a town ordinance must "bear a reasonable relationship to the public health, safety, morals, or general welfare" and "must not be unreasonable, arbitrary, or discriminatory based upon the reasonably foreseeable future development of the community." *Warren v. Municipal Officers of Gorham,* Me., 431 A.2d 624, 627 (1981). Furthermore, according to *Warren,* aesthetic considerations, fear of deterioration in the value of neighboring properties, and concern over an adverse impact on the town's tax base are legitimate reasons for enacting a mobile home ordinance, reasons "which do properly relate to the public health, safety, morals or general welfare." 431 A.2d at 628. Those are the same three reasons that the Superior Court found were in fact Durham's proposed justifications for its mobile home ordinance.[5]

■ In light of the listed purposes, the grandfather clause in the Durham ordinance is not unreasonable, arbitrary, or discriminatory. Rather, it strikes a rational balance between speedy achievement of the Town's legitimate planning goals and the interests of those town residents who moved mobile homes into Durham before the ordinance was enacted. The grandfather clause, which is properly read only to allow such residents to remain in their existing mobile homes at their 1976 locations, replace them, or transfer them, preserves the bulk of the rights anticipated by such residents when they purchased their mobile homes, while ensuring that over time, by attrition, the nonconforming uses will be reduced in number. Some form of a grandfather clause is probably required to save the entire ordinance from a constitutional challenge under the takings clause.[6] Thus,

5. Witnesses in the Superior Court testified that town officials, in drafting the mobile home ordinance, were concerned about the "aesthetic contrast" between the Town's traditional older homes and the metallic, box-shaped, flat-roofed mobile homes. There was also expert testimony that the presence of mobile homes tended to depress the value of the traditional homes on nearby or adjoining lots. Finally, there was evidence that the Town's planning board took

into consideration the fact that an occupied mobile home requires approximately the same level of municipal services as a site-built home while generating less tax revenue due to its lower market value.

6. U.S. Const. amend. V (applicable to the states through amend. XIV); Me. Const. art. I, § 21. A provision "for the continuance of the nonconforming use ... is ordinarily included in

such a clause is not merely rationally related to the Town's goals, but is probably necessary to effect those goals, as a mobile home ordinance vulnerable to a challenge under the takings clause is of no use whatever in implementing the Town's ultimate planning scheme.

Under the equal protection clauses of the federal and state constitutions, once a legislative classification has been found not to "[trammel] fundamental personal rights" or be "drawn upon inherently suspect distinctions such as race, religion, or alienage," *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976), it need only be shown to be rationally related to a legitimate public purpose.

A classification . . . must be natural and reasonable and based upon an actual difference in the classes bearing some substantial relationship to the public purpose sought to be accomplished by the discrimination in rights and burdens. If a classification, though necessarily discriminatory, stands these tests, it is not a denial of equal protection of the laws.

*Wright v. Michaud,* 160 Me. 164, 171, 200 A.2d 543, 547 (1964).

No fundamental right or inherently suspect distinction is implicated by Durham's decision to grant a limited exemption from the terms of its mobile home ordinance for prior nonconforming uses. The remaining "rational relationship" test is easily met by the Durham ordinance, grandfather clause and all, for the same reasons discussed in the due process context above. The exemption for prior nonconforming uses is rationally related to the Town's aesthetic, proper-

ty-value, and tax-base goals, as it saves the entire ordinance from a serious takings clause question while allowing the Town to proceed consistently towards its objective of confining mobile homes to duly licensed mobile home parks.

### III. *The Comprehensive Plan*

The Superior Court held that Durham's mobile home ordinance, taken in its entirety, is consistent with the Town's 1972 comprehensive plan. Whether or not the requirements of 30 M.R.S.A. § 4962 apply to the ordinance in question here,[7] we have no doubt that the Superior Court's conclusion was warranted by the evidence before it. The comprehensive plan itself indicates that Durham's planning board and residents were concerned with preserving the Town's rural character and protecting the tax base—concerns overlapping considerably with those underlying the mobile home ordinance. Most significantly, the comprehensive plan specifically states, "the Planning Board approves of locating mobile homes in parks designed to be harmonious with the general character of the Town." We would be hard pressed to conceive of any stronger evidence that the mobile home ordinance in this case is consistent with Durham's comprehensive plan.

### IV. *Conclusion*

At oral argument, counsel for appellants Kenneth and Nancy Stewart expressly waived all claims that anything in the Durham mobile home ordinance other than its grandfather clause renders it unconstitutional. Accordingly, our decision on the

zoning and police power ordinances because of hardship and [the] doubtful constitutionality of compelling immediate cessation of nonconforming uses." *Town of Windham v. Sprague,* Me., 219 A.2d 548, 550 (1966).

7. We assume without deciding that Durham's mobile home legislation is truly a "zoning" ordinance as defined by 30 M.R.S.A. § 4962(1)(H) (1978) ("the division of a municipality into districts and the prescription and reasonable application of different regulations in each district"). *But cf. Benjamin v. Houle,* Me., 431 A.2d 48 (1981) (Auburn ordinance prohibiting the removal of gravel from any land in the city

characterized as "a general and uniform city-wide regulation" and *not a zoning ordinance at all*); *Town of Boothbay v. Nat'l Advertising Co.,* Me., 347 A.2d 419 (1975) (Boothbay ordinance regulating all off-premises billboards in the town by same standard treated as an exercise of the town's police powers). It is here argued that Durham's mobile home ordinance is a zoning ordinance rather than a uniform town-wide regulation because it implicitly creates a new division or zone—mobile home parks—in addition to the two zones ("rural" and "resource protection") already created by Durham's land use ordinance.

two issues presented to us concludes this case in favor of the Town. The entry shall be:

Appeal sustained.

Cross-appeal denied.

Remanded to the Superior Court for entry of judgment for defendants and further proceedings consistent with the opinion herein.

All concurring.