## WATERVILLE HOTEL CORP.
### v.
## BOARD OF ZONING APPEALS et al.

Supreme Judicial Court of Maine.

April 25, 1968.

Albert L. Bernier, Waterville, for appellant.

Morton A. Brody, Waterville, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On report, on plaintiff's complaint, defendant's answer and an agreed statement of facts.

On February 7, 1967, the City Council of the City of Waterville enacted a provision of its zoning ordinance which zoned an area of land, including that owned by the plaintiff, for Commercial C purposes. The plaintiff's lot is a triangular one the apex of which is the intersection of Maine Street and College Avenue which form two of its sides.

On March 27, 1967, the plaintiff filed with the Building Inspector an application for a permit for construction on its lot by its proposed lessee a three-bay, ranch style filling station. A proposed plot plan accompanied the application. Although the zoning ordinance makes the Building Inspector the permit-issuing authority in most instances, it requires him to refer to the Board of Zoning Appeals all proposed Com-

mercial C uses, and the Building Inspector did so in this case.

Among the uses permitted in a Commercial C zone by Section IV-C-a of the zoning ordinance is that of "automobile business". Section II defines this phrase as "auto repair garages, gasoline service stations, car washes, machinery repair, auto sales, farm machinery sales and services, house trailer sales, and similar activities." It is not disputed that the plaintiff's proposed use is of a type permitted in a Commercial C zone. The zoning ordinance also specifies certain development requirements for a construction such as plaintiff's and it is agreed that these were complied with.

Section IV-G states that:

"all major changes of uses of land, buildings or structures in this [Commercial C] zone shall be *subject to the approval of the Board of Zoning Appeals.*" (Emphasis added)

The disputed issue involves the interpretation of the italicised words.

A public hearing on plaintiff's application for a permit was had, after due notice, before the Board of Zoning Appeals, followed by two continued hearings. After the last hearing the Board denied plaintiff's application "on the ground that the proposed use would create a traffic hazard in the context of prevailing traffic patterns on the adjoining streets."

The parties agree that we are presented with two issues:

"1. Whether or not the Board of Zoning Appeals has the right to deny a permit for Commercial C purposes where (1) a proposed use is consistent with the permitted Commercial C use and (2) where all applicable Commercial C development requirements are complied with.

"2. Whether or not the Board of Zoning Appeals of the City of Waterville has the right to deny a permit for Commercial C use based upon considerations of traffic

hazards or traffic conditions on the streets adjoining the use area."

We are thus called upon to determine what authority the ordinance has given to the Board of Zoning Appeals as to applications for permits in a Commercial C zone.

Section VII-D-2 defines generally the powers of the Board of Zoning Appeals:

"Powers. The Board of Zoning Appeals as authorized by the provisions of Chapter 90A, Revised Statutes of 1954, as amended, shall have the powers and duties set forth below, all of which shall be exercised, subject to findings of fact and appropriate conditions, in harmony with the comprehensive plan for municipal development and the purpose and intent of this ordinance, in accordance with public interest, and in support and furtherance of the health, safety and general welfare of the residents of the municipality."

This section goes on to grant to the Board power to hear and decide appeals from the decisions of the Building Inspector; to grant variances in certain situations under certain fully described standards; to review matters concerning conformity with permitted use and development requirements referred to it by the Building Inspector; and to hear and decide all special and general use exceptions. This subsection also requires the Board of Zoning Appeals to hear all applications for major Commercial B and Commercial C uses.

In addition, in matters involving use exceptions and in both Commercial B and C zone uses, the Board may "prescribe conditions of use which the Board finds will not be detrimental to the neighborhood".

We see that the only powers expressly given to the Board as a permit-issuing authority as to Commercial C uses are 1) to determine whether the use applied for is one permitted in a Commercial C zone, 2) to ascertain that the planned use complies

with the development requirements of the ordinance, such as lot sizes, set-backs, yards, etc., and 3) to prescribe conditions of use which it finds will not be detrimental to the neighborhood. (As no conditions of use were prescribed here the validity of delegation to the Board of this third authority is not before us and we express no opinions concerning it.)

Do the words "subject to the approval of the Board of Zoning Appeals" give the Board discretion to deny a permit for the type of use permitted in a zone when the development requirements have been met?

■ The uses allowed in a designated zone may be permitted uses or conditional uses. If the legislative body—here, the City Council—has declared the use to be a *permitted* one then there is no further scope for the Board's activity after the Board has established that the use *is* a permitted one and that development requirements have been met. The legislative body would have determined that such use could be made upon the property as a matter of right. In this case, although the language of the ordinance in creating the various use zones in the city speaks of *"Permitted* Uses in Each District" (Emphasis added), the addition of the words "subject to the Approval of the Board of Zoning Appeals" convinces us that a *conditional* use was intended—the condition being that the Board must approve of the particular use.

■ The question presented by this interpretation is: Can the city endow the Board with discretionary authority to approve or disapprove applications for permits in this manner? The legislative body may specify conditions under which certain uses may exist and may delegate to the Board discretion in determining whether or not the conditions have been met. The legislative body cannot, however, delegate to the Board a discretion which is not limited by legislative standards. It cannot give the Board discretionary authority to approve or disapprove applications for permits as the Board thinks best serves the public interest without establishing standards to limit and guide the Board.

We find that the weight of authority holds that where a zoning ordinance attempts to permit municipal officials to grant or refuse permits without the guidance of any standards, equal protection is denied the citizens.

"* * * Where a zoning ordinance permits officials to grant or refuse permits without the guidance of any standard, but according to their own ideas, it does not afford equal protection. It does not attempt to treat all persons or property alike as required by the Zoning Act. While the exercise of discretion and judgment is to a certain extent necessary for the proper administration of zoning ordinances, this is so only where some standard or basis is fixed by which such discretion and judgment may be exercised by the board. Where a zoning ordinance is vague and indefinite, it cannot be sustained as valid under the authorizing act." Taylor v. Moore, 303 Pa. 469, 154 A. 799 (1931).

In Osius v. City of St. Clair Shores, 344 Mich. 693, 75 N.W.2d 25, 58 A.L.R.2d 1079 (1956), the plaintiff was denied a permit to construct a service station in a zone where such businesses were permitted. The ordinance gave the zoning board of appeals original jurisdiction to grant or refuse such applications but contained no standards for the guidance of the board. The Court found those provisions of the ordinance to be unconstitutional, saying:

"The ordinance presented is fatally defective. The zoning board of appeals is simply given authority to permit, and obviously to refuse to permit, the erection of gasoline stations after public hearings. But what standards prescribe the grant or rejection of the permission? We find none. The ordinance is silent as to size, capacity, traffic control, number of curb cuts, location, or any other of the myriad considerations applicable to such business."

In North Bay Village v. Blackwell, Fla., 88 So.2d 524 (1956) the ordinance in question permitted filling stations in the reference zone "subject to approval of location and site by action of Council." The city council denied the defendants a permit. The court ruled that the failure of the ordinance to prescribe definite standards for the guidance and control of the permit-issuing officers invalidated that part of the municipal enactment. See also Homrich v. Storrs, 372 Mich. 532, 127 N.W.2d 329 (1964).

The view that the legislative authority cannot delegate to itself or to another municipal board an unfettered discretion to issue or not issue permits appears to be accepted by the text writers who have been concerned with the subject. See Yokley on Zoning Law & Practice, Vol. 1, Section 62; 9 McQuillin, Municipal Corporations, Section 26.114, page 267, 3 Antieau, Municipal Corporation Law, Section 24.08, page 377.

In the instant case the ordinance provides no standards to limit and guide the Board of Zoning Appeals in the exercise of its permit-issuing power.

It has been argued that sufficient standards to govern the Board's action are found in the language of Section VII-D-2 which required the Board to exercise its power "in harmony with the comprehensive plan for municipal development and the purpose and intent of this ordinance, in accordance with the public interest and in support and furtherance of the health, safety and general welfare of the residents of the municipality." Neither this language nor the language of Section VII-A ("The regulations of this ordinance shall be held to be the minimum requirements for the promotion of the health, safety and general welfare * * *") established sufficient standards to meet the constitutional requirement of standards.

In *Osius*, the court found that similar broad statements as to purposes of the ordinance as to public health, safety and general welfare furnished no adequate guidelines for the Board's action.

In State ex rel. Humble Oil & Refining Co. v. Wahner, 25 Wis.2d 1, 130 N.W.2d 304 (1964) the legislative statement that the provisions of the ordinance "shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, prosperity or general welfare", language very similar to that of the present case, did not furnish sufficient criteria for the Board's action. The court in Humble said:

"Standards were needed in the Allouez ordinance, not only to guide the board but also to inform Humble and any other parties hoping to build filling stations of what was required of them and what factors were to be considered by the board in disposing of each application for a filling station permit. Without standards both the board and Humble 'were at sea without chart, rudder, or compass' and this was bound to create a situation in which the board could do just as it pleased."

The reasons for requiring that standards be prescribed can clearly be seen. While the plaintiff's use of its land is subject to reasonable regulation by the City in the exercise of its police power, such regulation must be in accordance with a proper rule or standard which must be applied alike to all persons similarly situated. The failure to spell out standards reduces the property owner to a state of total uncertainty and amounts to depriving him of the use of his property.

"Without definite standards an ordinance becomes an open door to favoritism and discrimination, a ready tool for the suppression of competition through the granting of authority to one and the withholding from another. * * * A zoning ordinance cannot permit administrative officers or boards to pick and choose the recipients of their favors." Osius v. City of St. Clair Shores, supra.

We are aware that the preamble of the ordinance, in reciting the design of the legislation, includes " * * * to promote traffic safety, * * * to provide an adequate street system. * * *" This statement of broad purpose does not enlarge the scope of the ordinance or convey power to the Board. Presumably the City Council, in enacting the zoning law and especially that section which determined that the Commercial C zone was an appropriate location for filling stations, gave due consideration to the traffic situation in the area. The language of the preamble does not constitute a sufficient standard for the Board to insure similar application to all persons similarly situated, as the City's exercise of its police power must do. Maine Constitution, Art. I, Sec. 6–A; Dirken v. Great Northern Paper Company, 110 Me. 374, 86 A. 320 (1913).

A further basis for our conclusion that the grant of unlimited discretion to the Board exceeded the City's authority is found in the fact that the state enabling legislation requires that "[a] zoning ordinance shall be drafted as an integral part of a comprehensive plan for municipal development, * * *" 30 M.R.S.A. Sec. 4953(2). By requiring that zoning be in accordance with a comprehensive plan, the legislature clearly attempted to avoid ad hoc, unplanned, and potentially arbitrary zoning. The City's ordinance which gives the Board unbridled discretion to approve or disapprove all major changes in Commercial C was not zoning in accordance with a comprehensive plan but rather was a device to permit, in effect, lot-by-lot zoning.

For the reasons stated we conclude that the zoning ordinance of the City of Waterville is unconstitutional and void in so far as it attempts to delegate to the Board of Zoning Appeals authority to approve or reject applications for permit in the Commercial C zone without adequate standards for the Board's guidance.

Case remanded to Superior Court for appropriate action in accordance with this opinion.

MARDEN, J., did not sit.

DUFRESNE, J., sat at argument but did not participate in this decision.