**Gordon WAKELIN**

v.

**TOWN OF YARMOUTH et al.**

Supreme Judicial Court of Maine.

Argued March 5, 1987.
Decided March 31, 1987.

Thomas P. Wilson (orally), Schwartz, Wilson, Fernald & Foley, Portland, for plaintiff.

Catherine O'Connor (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

The Zoning Board of Appeals (the Board) of the Town of Yarmouth denied plaintiff Gordon Wakelin's request for a special exception under the Town's zoning ordinance. Wakelin filed in the Superior Court (Cumberland County) a timely complaint containing two counts. The first sought direct judicial review under M.R.Civ.P. 80B of the merits of the Board's decision. The second

count sought a declaratory judgment that under both the United States and the Maine Constitutions the zoning ordinance represented an unlawful delegation of legislative authority to the Board. The Superior Court entered a summary judgment for Wakelin on the second count, finding that the controlling provision of the ordinance was devoid of the constitutionally required specific standards necessary to guide the Board in deciding upon applications for specific exceptions. The court thereupon entered a judgment on the Rule 80B count reversing the Board's decision and ordering the Board to grant Wakelin the special exception. On appeal by the Town and its building inspector, William Lowell, we uphold the decisions of the Superior Court.

Wakelin purchased a single-family house and attached barn on Pleasant Street in Yarmouth, intending to renovate both structures and to install three rental apartments in the barn. The property is located in a zoning district in which a residence plus three rental units is a permitted use provided that the Board finds that it meets the factual requirements for a special exception.[1] Under the ordinance, a special exception is available if the Board finds, *inter alia,* that

> The proposed use will be compatible with existing uses in the neighborhood, with respect to physical size, visual impact, intensity of use, proximity to other structures and density of development.

Town of Yarmouth Zoning Ordinance, art. VII, § 101.4(4)(e). After two public hearings the Board denied Wakelin's request for a special exception, finding that the proposed use was "not in keeping with the neighborhood." The Board found no rea-

---

**1.** The definitional section of the Yarmouth zoning ordinance, article I, section 104.63, defines a special exception as follows:

A special exception is a use that would not be appropriate generally or without restriction throughout the zoning division or district but which, if controlled as to number, areas, location, or relation to the neighborhood, would promote the public health, safety, order, comfort, convenience, appearance, prosperity, or general welfare. Such uses may be permitted in such zoning district as special

exceptions, if specific provision for such special exception is made in this zoning ordinance.

Article VII, section 101.4(1) offers further elaboration:

Uses designated as Special Exceptions within this ordinance are intended as potential land uses in the districts in which they are so designated, subject to the issuance of a Special Exception permit by the Board of Appeals. . . .

son for denying Wakelin's application except as to the above-quoted compatibility requirement, and, of the five required tests of compatibility, it found that Wakelin's project satisfied all but two: "intensity of use" and "density of development."

The determinative issue on this appeal is whether the terms "intensity of use" and "density of development" are sufficiently specific standards to guide both an applicant in presenting his case for a special exception and the Board in examining the proposed use for compatibility with existing uses. We conclude that they do not come up to the level of specificity required to pass constitutional muster. The ordinance fails to articulate the quantitative standards necessary to transform the unmeasured qualities "intensity of use" and "density of development" into specific criteria objectively usable by both the Board and the applicant in gauging the compatibility of a proposed use with existing uses in the surrounding area.

An applicant for a special exception is faced with the question, "What facts must I present to gain the Board's approval?" He finds, however, "no language in the [Yarmouth] ordinance, which, by reasonable interpretation answers [that] question[ ]." *Stucki v. Plavin*, 291 A.2d 508, 511 (Me.1972). Absent specific standards giving content to the term "intensity of use," whether that term means "two persons per acre" or "twenty persons per acre," or something else entirely, is a matter of conjecture. Similarly, absent specific standards giving content to the term "density of development," whether that term signifies a ratio of built-upon acreage to unbuilt-upon acreage, or the number of structures on a particular lot, or something else entirely, is also a matter of conjecture. From the ordinance an applicant cannot even tell whether compatibility with his project's surroundings requires the same intensity of use and density of development, or less, or more. Such uncertainty is impermissible. As we stated in *Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d 50 (Me.1968), the absence of specific standards in zoning ordinances results in a denial of equal protection of the laws to the property owner who is "reduce[d] ... to a state of total uncertainty and ... deprive[d] ... of the use of his property." *Id.* at 53.

The lack of specific standards in the Yarmouth ordinance permits the Board to go beyond its proper quasi-judicial function. Rather than restricting itself to its narrow task of finding whether a proposed "special exception" use satisfies defined factual requirements, the Board can roam at large in policy-making. The Board on each application for a special exception is free to express a legislative-type opinion about what is appropriate for the community. Yarmouth's legislative body, however, has already decided that a residence plus three rental units is an appropriate use at the Pleasant Street location, provided only that certain factual conditions are satisfied. The Board's only "power is to 'hear and decide'" whether the applicant has met those factual conditions. *Phillips Petroleum Co. v. Zoning Board of Appeals*, 260 A.2d 434, 435 (Me.1970) (quoting 2 A. Rathkopf, *The Law of Zoning and Planning* ch. 54, at 54–24). The absence of standards to control the authority delegated to the Board is inconsistent with the principle that "[t]here should be no discretion in the Board ... as to whether or not to grant the permit if the conditions stated in the ordinance exist. That determination should be made by the legislators." *Stucki v. Plavin*, 291 A.2d at 511. *See also Cope v. Town of Brunswick*, 464 A.2d 223, 227 (Me.1983). The ordinance opens the door wide to favoritism and discrimination by permitting the Board to grant or deny special exceptions for reasons that are unconnected to the ordinance but that masquerade as quasi-judicial findings of fact. *Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d at 53.

The entry is:

Judgment affirmed.

All concurring.