Coleman P. GORHAM

v.

TOWN OF CAPE ELIZABETH.

Supreme Judicial Court of Maine.

Argued Sept. 16, 1992.
Reargued Nov. 3, 1992.
Decided March 11, 1993.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Coleman Gorham owns a single family residence on Bowery Beach Road in Cape Elizabeth. The property is in a Residence–A zoning district. R–A zone permitted uses include single family dwellings, agricultural uses, and schools. Multi-unit dwellings are permitted as a conditional use upon a showing of compliance with conditions set out in the Cape Elizabeth zoning ordinance.[1] In August 1989, Gorham filed with the Cape Elizabeth Zoning Board of Appeals an application for a conditional use permit in order to convert his single family home to a multi-unit dwelling. Gorham sought approval for an apartment within his home; there were to be no changes to the exterior of the building or to the parking facilities. The Board held three public hearings, and considered several letters, three reports from real estate appraisers and the oral comments of a number of residents before it unanimously denied Gorham's application. The Board, in denying the application, determined that the use of Gorham's home as a multi-family unit would "adversely affect the value of adjacent properties" under Section 19–4–7(b)(4) of the zoning ordinance.

Gorham brought a three-count complaint in the Superior Court (Cumberland County) naming as defendants the Town of Cape Elizabeth and its code enforcement officer.[2] In Count I, an M.R.Civ.P. 80B, Gorham alleges that decision was not supported by substantial evidence in the record and was arbitrary and unreasonable. In Count II, Gorham seeks a declaratory judgment that

E. Stephen Murray (orally), Elaine L. Clarke, Murray, Plumb & Murray, Portland, for plaintiff.

Michael H. Hill (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendants.

Gregory W. Powell (orally), Friedman & Babcock, Portland, for intervenor.

1. Section 19–4–7(b) ("Conditional Use Applications"), and Section 19–4–7(d) ("Conversions to Multi-unit Dwelling"), are the two applicable sections of the zoning ordinance.

2. Ernest W. MacVane, Jr. is the Code Enforcement Officer for the Town of Cape Elizabeth. Robert Goldman, Constance Goldman, George Knowles, Barbara Knowles, Richard S. Chapman, Virginia H. Chapman, Gregory W. Powell, Amy T. Powell, Cynthia B. Doucette, Joseph A. Doucette, Douglas Dransfield, Gail M. Dransfield, Alan A. Schock, Deborah D. Schock, Allen W. Wicken, Judith A. Wicken, Martha E. Blackwelder, Carolyn L. Huey, I. Frank Huey, Ceil P. Simpson, Doug Gagne, Michele Gagne, Cheryl R. Hagmann and Erick L. Hagmann, all opponents to Gorham's application, were granted intervenor status in the Superior Court. See M.R.Civ.P. 24.

Section 19–4–7(b) of the zoning ordinance is unconstitutional because it bears no substantial relationship to the public health, safety, and general welfare, and it impermissibly delegates legislative authority to the Board. In Count III, Gorham alleges, *inter alia,* that his constitutional right to due process was violated because of the Board's bias and predisposition against multi-family dwellings. The Superior Court rejected Gorham's appeal, entering a judgment for the Town on Count I (*Brennan, J.*), and granting a summary judgment to the Town on Counts II and III (*Lipez, J.*). Gorham then appealed to this court. We find no error and affirm the judgment.

## CONSTITUTIONAL CHALLENGES

### A. Substantial Relationship to Health, Safety, and General Welfare And Delegation of Legislative Power

■ Under Section 19–4–7(b) of the Cape Elizabeth zoning ordinance, one of the criteria that has to be satisfied before a conditional use application is approved is that "[t]he proposed use will not adversely affect the value of adjacent properties." Gorham, under the due process clause, challenges the constitutionality of the ordinance's "adverse affect" criterion in two respects. First, he contends that the criterion does not bear a substantial relationship to the public health, safety, or welfare. *See Warren v. Municipal Officers of Town of Gorham,* 431 A.2d 624, 627 (Me.1981). Gorham also contends that Section 19–4–7(b)(4) constitutes an improper delegation of legislative authority. We are unpersuaded by either contention.

■ The constitutionality of a zoning ordinance is presumed. Gorham, in attacking the ordinance, has the burden of proof of demonstrating its unconstitutionality.

*Warren,* 431 A.2d at 627–28. Contrary to Gorham's first contention, the maintenance of property values is a legitimate interest served by zoning restrictions. *Id.* at 628; *Barnard v. Zoning Bd. of Appeals of Town of Yarmouth,* 313 A.2d 741, 745 (Me. 1974). Therefore, the Cape Elizabeth zoning ordinance meets the due process requirement that it bear a reasonable relationship to the public health, safety, morals, or general welfare. *Warren,* 431 A.2d at 627.

■ Gorham also contends that the "adverse affect" criterion set out in Section 19–4–7(b)(4) constitutes a constitutionally impermissible delegation to the Board of discretionary authority not sufficiently limited by legislative standards, *see Stucki v. Plavin,* 291 A.2d 508, 510 (Me.1972), and argues that the criterion is too subjective and not measurable, leading to favoritism and discrimination. *See Wakelin v. Town of Yarmouth,* 523 A.2d 575, 577 (Me.1987).

■ Because conditional uses are those uses that the legislature has determined to be ordinarily acceptable in a particular zone, in order to withstand attack as an impermissible legislative delegation of authority, ordinances that establish criteria for acceptance of a conditional use must specify sufficient reasons why such a use may be denied. *Bass v. Town of Wilton,* 512 A.2d 309, 310 (Me.1986). A conditional use standard must be sufficiently specific "to guide both an applicant in presenting his case ... and the Board in examining the proposed use...." *Wakelin,* 523 A.2d at 577.

In this case, the Town has determined that in order for multi-family use of property to be allowed in an R–A zone, the Board must determine, among other criteria, that such use "will not adversely affect the value of adjacent properties."[3] Although

---

3. Section 19–4–7(b) of the Cape Elizabeth Zoning Ordinance provides:

(b) *Conditional Use Applications.* The Board shall consider requests for the issuance of permits for any of the conditional uses of land or buildings permitted in the various districts, upon submission to the Building Inspector of an application and the materials listed in Section 19–2–9(b)(2), (A) through (F), (I) and (K). The Board shall, after review of required materials, authorize issuance of a conditional use permit, upon a showing that: [Amended 7/29/87]

1. Any conditions prescribed for such conditional use will be satisfied.

we have not previously decided whether such a criterion is sufficiently specific to survive constitutional scrutiny, *see Cope v. Town of Brunswick*, 464 A.2d 223, 225 n. 3 (Me.1983), we conclude that Section 19–4–7(b)(4) gives sufficient guidance to a conditional use applicant, such as Gorham, as to what facts must be presented "to gain the Board's approval" and to the Board itself in examining the proposed use. *Wakelin*, 523 A.2d at 577. Gorham and the parties opposing his application presented a substantial amount of evidence directed to the precise issue addressed in Section 19–4–7(b)(4), namely, whether the proposed multi-family use of Gorham's property would adversely affect values of surrounding property.

In *Bass*, the constitutionality of the conditional use criterion "devalue adjacent property" was raised by the parties but, because the case was decided on other grounds, was not addressed by the court. 512 A.2d at 311. We agree with the Superior Court, however, that the reasoning of Justice Scolnik in his dissent in *Bass*, urging that such a standard was sufficiently specific to be constitutional, is persuasive when applied to the instant case.

The plain meaning of the term "devalue" is sufficient to guide the Board in its application of [that section of the zoning ordinance] to a requested conditional use permit. The term "devalue," in this zoning context, obviously means to cause the reduction or loss in the value of adjacent property. By the employment of this objective standard, the Board does not assume for itself an unfettered discretion to grant or deny the permit. As this case illustrates, evidence may be presented by expert appraisers as well as the owners of the adjacent land. Such

evidence provides a sufficient basis for an evaluation of whether the proposed project would cause a reduction in the value of the adjacent properties. If so, [the section] requires that the permit be denied. In short, the standard of whether adjacent property is devalued is a sufficient guide for the Board to employ in its decision-making process, and it enables those to whom the law is to be applied reasonably to determine their rights thereunder.

*Bass*, 512 A.2d at 312 (*Scolnik, J.*, dissenting) (citations omitted). *See* R.M. Anderson, *American Law of Zoning 3d* § 21.14 at 689 (1986) ("[A] board of zoning appeals may deny a special permit where the record discloses that the proposed use will depreciate surrounding property").

▇ Contrary to Gorham's contention that his application must be approved unless there is present some characteristic of his property, such as changes to the building's exterior, apart from its use as a multi-family dwelling, that adversely affects neighboring properties, the ordinance plainly states that a single family dwelling can be converted to multi-family use in an R–A zone only if such "use will not adversely affect the value of adjacent property." The wording of the ordinance does not require that the conversion be allowed *unless* the property has unique characteristics that impact property values.

▇ Gorham also argues, relying on our decision in *Cope*, that the ordinance is based on a presumption that the conditional uses allowed will not adversely affect the value of adjacent property and that the burden should have been on those opposing Gorham's application to demonstrate such

---

2. The proposed use will not create hazardous traffic conditions when added to existing and foreseeable traffic in its vicinity.

3. The proposed use will not create unsanitary conditions by reason of sewage disposal, emissions to the air, or other aspects of its design or operation.

4. The proposed use will not adversely affect the value of adjacent properties.

5. The proposed site plan and layout are compatible with adjacent property uses and with the Comprehensive Plan.

6. The design and external appearance of any proposed building will constitute an attractive and compatible addition to its neighborhood, although it need not have a similar design, appearance or architecture.

Upon such showing to the satisfaction of the Board, it shall authorize the issuance of permits for such conditional use, but may impose such conditions upon such use as it deems necessary in order to assure that the foregoing objectives shall be attained.

an adverse effect. We disagree. In *Cope* we concluded that whether an exceptional use under the ordinance would "generally comply with the health, safety and welfare of" the area is a legislative question that could not be delegated to the board of appeals. 464 A.2d at 227. Although uses that are classified as exceptions or conditional uses may result from a legislative determination that such uses will not *ordinarily* be "detrimental or injurious to the neighborhood," *id.* at 226–27, *Cope* does not prohibit a zoning ordinance from requiring compliance with specific and measurable criteria, including the criterion that the conditional use of the property will not adversely affect the values of adjacent properties.

Although an ordinance *could* be written to allow the conditional use absent a showing that the use will adversely effect the values of adjacent properties, in effect placing on the opponents of the conditional use the burden to demonstrate that certain conditions have *not* been met, under *this* ordinance the burden to show compliance with all conditions is on the applicant. Moreover, this case did not turn on a failure to meet the burden of proof. The Board's finding was not that it was not persuaded that there was no adverse affect on property values. Rather, the Board made an affirmative finding that the use by Gorham of his home as a multi-family unit would actually adversely affect the values of adjacent property.

The Board heard the evidence and made a factual conclusion in accordance with the ordinance that Gorham's use of his property as a multi-family dwelling would adversely impact the property value of an adjacent property. Accordingly, pursuant to Section 19–4–7(b)(4) of the zoning ordinance, the Board denied his application. Because the maintenance of property values is a legitimate interest served by zoning restrictions, and because Section 19–4–7(b)(4) specifically required the Board to determine the effect of the conditional use

on property values, a specific and discernible standard that the evidence addressed, Gorham's constitutional challenge must fail.

## B. Bias, Prejudice, and Predisposition of the Board

■ Gorham also contends that he was denied due process because of the Board's bias, prejudice, and predisposition against multi-unit dwellings. It is true that an applicant before an administrative board is entitled under the due process clause of the United States and Maine constitutions to a fair and unbiased hearing. *See Mutton Hill Estates, Inc. v. Town of Oakland,* 468 A.2d 989 (Me.1983). In *Mutton Hill Estates* we upheld, on due process grounds, the Superior Court's setting aside of a planning board denial of an application for approval of a subdivision. In that case, the board had invited admittedly biased opponents of the subdivision to participate in an *ex parte* session when the board made its findings of fact to support a denial of the application. *Mutton Hill Estates,* 468 A.2d at 992.

■ In this case, to support his claim of a due process violation, Gorham relies on statements he alleges were made to him by the code enforcement officer, that the Board does not want two-family houses in Cape Elizabeth, and that "you don't stand a prayer [on your application]." In addition, Gorham relies on statements made by various members of the Board at the public hearing on his application and during the Board's deliberations.[4] The statements of the code enforcement officer, who is not a member of the Board, do not demonstrate denial of due process to Gorham. The statements of the Board members themselves, contrary to Gorham's contention, do not reflect an unlawful bias or predisposition. Rather, the entire record indicates that Board members listened attentively, questioned witnesses, both for and against the petition, and discussed the

---

**4.** Gorham withdrew his motion for a trial of the facts filed in conjunction with his Rule 80B appeal of the Board's action, and makes no argument that he could present additional evidence in support of his claim of constitutional deprivation resulting from the alleged bias and predisposition of the Board members.

evidence with a view toward making a sincere effort to fairly decide the issue before them.

Prior to rendering its decision denying the application, the Board held three hearings (the matter was tabled at the first two), received and considered a number of documents submitted by both Gorham and opponents to his application, including reports from appraisers on the effect of the multi-family use of Gorham's residence on the property values of adjoining properties, and heard comments from a number of residents. At the close of the hearing, the Board openly deliberated before concluding that Gorham's application should be denied. The evidence is inadequate to support Gorham's contention that he was denied due process because of bias and predisposition. *See Estate of Althenn v. Althenn,* 609 A.2d 711, 714 (Me.1992) (to resist motion for summary judgment, party with burden of proof required to produce evidence sufficient to resist motion for directed verdict).

## SUFFICIENCY OF THE EVIDENCE

■ Gorham also contends that the Board's decision is not supported by substantial evidence in the record, that the findings of the Board are inadequate, and that the decision is based on the personal opinions of residents and on Board members' own personal opinions. We disagree.

■ We review decisions of zoning boards for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Forester v. City of Westbrook,* 604 A.2d 31, 32 (Me.1992). "Substantial evidence" has been characterized as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hrouda v. Town of Hollis,* 568 A.2d 824, 826 (Me.1990) (quoting *In re Maine Clean Fuels, Inc.,* 310 A.2d 736, 741 (Me.1973)). The fact that two inconsistent conclusions can be drawn from the evidence does not mean that a board's finding is unsupported by substantial evidence. *Id.*

In this case, the Board had before it conflicting evidence as to the effect that the conversion of Gorham's single family residence to two family use would have on the adjacent properties. There was evidence, in the form of the opinions of two expert appraisal witnesses, that there would be no adverse impact. That evidence would have supported a conclusion by the Board that the multi-family use of Gorham's property would not adversely affect the property values in the area. There was contrary evidence, however, from an expert appraiser, from a real estate broker, and from owners of neighboring properties, that the conversion would have an adverse impact on the value of the adjacent properties. This constitutes substantial evidence to support the ultimate conclusion of the Board that the use of the property by Gorham as a multi-family unit would adversely affect the value of adjacent properties. *See Hrouda,* 568 A.2d at 826. To vacate the Board's decision for insufficient evidence, we would have to conclude that the Board was compelled to find that there would be no adverse impact on property values. *See Total Quality, Inc. v. Town of Scarborough,* 588 A.2d 283, 284 (Me.1991). This we are unable to do.

Moreover, the Board's denial of Gorham's application was based on the clearly stated finding that Gorham's use of his property as a multi-family residence would adversely affect the value of adjacent properties. The finding was made after a lengthy hearing and discussion of the evidence by the Board members. No request for further findings was made. *See Pearson v. Town of Kennebunk,* 590 A.2d 535, 537 n. 1 (Me.1991). Contrary to Gorham's contention, the findings of the Board are adequate, and are based on substantial evidence in the record. We cannot conclude that they constitute unsubstantiated opinion.

Other contentions raised by Gorham are without merit and require no discussion.

The entry is:

Judgment affirmed.

WATHEN, C.J., and GLASSMAN and COLLINS, JJ., concur.

ROBERTS, Justice, with whom RUDMAN, J., joins, dissenting.

I respectfully dissent. For the purpose of this dissent, I accept the Court's determination that the standard set out in section 19.4.7(b)(4) of the ordinance, i.e., "will not adversely affect the value of adjacent properties," provides adequate guidance to a conditional use applicant and to the Zoning Board of Appeals. I also agree with the Court's interpretation on page 7 of the slip opinion of our decision in *Cope v. Town of Brunswick*, 464 A.2d 223 (Me.1983). On the record before us, however, I conclude that the Board's rejection of Gorham's conditional use application was arbitrary and capricious.

The Town of Cape Elizabeth has determined, through its legislative process, that multi-family dwellings are consistent with the zoning scheme, provided there is a showing that the multi-family unit will not adversely affect the value of adjacent properties. In the words of the Court's opinion, that is "a legislative determination that such [a use] will not *ordinarily* be 'detrimental or injurious to the neighborhood.'" Op. at —— (quoting *Cope*, 464 A.2d at 226–27).

Gorham presented uncontested evidence that his proposal would not change the external appearance of his home and contested evidence by two appraisers that there would be no adverse affect on the value of adjacent properties. The evidence of a third appraiser and of neighbors, who predicted an adverse effect on the adjacent properties, did not explain what there was about Gorham's particular proposal that made it harmful to the value of adjacent properties. Rather, all the opponents' comments were addressed to the more general idea that multi-family units adversely affect the value of single family homes.

Because the Town of Cape Elizabeth has already made a legislative determination that multi-family units will not ordinarily affect the value of surrounding properties, it was inimical for the Board to accept evidence contrary to that determination. In fact, the Board's adoption of the theory that multi-family units devalue surrounding property effectively precludes approval of any plan proposing a multi-family unit, clearly contravening the legislative intent. We have previously said that allowing a zoning board to decide whether a particular use complies with a legislative dictate is

> improper if the Board is permitted to decide that same legislative question anew, without specific guidelines which permit the Board to determine what *unique* or *distinctive* characteristics of a particular [proposed use] will render it detrimental or injurious to the neighborhood.

*Cope*, 464 A.2d at 227 (emphasis added).

The Board, therefore, could have properly rejected Gorham's proposal only in reliance on evidence that his specific proposed use, because of its particular characteristics, would adversely affect the value of adjacent properties. Without any such evidence, the Board's decision was arbitrary, capricious, and contrary to the terms of the ordinance.