STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          Docket No. AP-01-16

                                        JLF -PEN - 5/31 2001


Widewaters Stillwater Co., LLC,
        Appellant


              v.

                                        ORDER ON APPEAL

City of Bangor,
        Appellee
                                        ┌─────────────────────┐
                                        │  FILED AND ENTERED  │
              and                       │  SUPERIOR COURT     │
                                        │                     │
BACORD,                                 │    MAY 3 1 2001      │
        Intervenor                      │                     │
                                        │  PENOBSCOT COUNTY   │
                                        └─────────────────────┘


        Widewaters Stillwater Co., LLC ("Widewaters") appeals from a
decision of the City of Bangor Planning Board ("Board") denying its
application for a site development permit.  Widewaters has pursued this
appeal pursuant to CITY OF BANGOR, MAINE, LAND USE CODE § 165-11 and
M.R.Civ.P. 80B.  For the reasons set out in this order, the court concludes
that the ordinance on which the Board based its decision embodies an
unconstitutional delegation of legislative power to that body and therefore
violates principles of due process and equal protection.  Because the
challenged ordinance is unconstitutional, it is unenforceable.

        Widewaters owns 27.4 acres of land located at the intersection of
Stillwater Avenue and the Gilman Road in Bangor.  In February and March
2001, Widewaters filed an application for a site development permit and

1

two conditional use permits as part of a plan to construct a new Wal-Mart "superstore" on its property.[1] The Board conducted a public hearing on the applications on March 20, 2001. After receiving testimony and documentary evidence, the Board recessed the meeting but ordered the record to remain open until April 3, thereby allowing further submissions regarding Widewaters' applications. The Board then reconvened on April 3. By a vote of 3-2, the Board denied Widewaters' site development application but, alternatively, unanimously granted its applications for the conditional use permits. Widewaters filed a timely appeal from the Board's denial of its site development application. The parties agreed to an expedited appeal process because of the limited duration of the conditional use permits that the Board granted at the April 3 meeting. *See* CITY OF BANGOR, MAINE, LAND USE CODE § 165-9(D)(2) (unless the Board votes otherwise, conditional use permit expires if a land development permit is not obtained within 60 days of its issuance).

On this appeal, Widewaters contends that one of the five Board members was less than impartial, that the evidence compelled the Board to grant its application for a site development application and that the municipal standards applicable to land development approval in this case are unconstitutional.

The record on this appeal clearly demonstrates that Widewaters' development project has evoked strong reactions within the community.

---

[1] In late August 2000, Widewaters filed a site plan and applications for a site development permit and two conditional use permits for a similar project on the same property. After a public hearing held in September, Widewaters withdrew its applications. The submission filed in February 2001 appear to reflect changes in the location of the project on Widewaters' land. Widewaters filed a revised site plan in March 2001.

Much of the public discussion concerning the construction of a new, large-scale Wal-Mart store reflects the differing views of people who hold their beliefs genuinely and vigorously. In contradistinction to the nature of the public debate that preceded this litigation, this court has the constitutional responsibility to examine the appellate record in an objective and non-partisan manner and, from that examination, to determine whether or not the Board's decision is affected by error of law. Under our system of government, issues of policy and public interest must be left to the City's legislative process, which is representational in nature. This court's subsequent role is limited to the question of whether that process satisfies the requirements of the law.

## A. Standing of BACORD

By order dated May 1, 2001, the court provisionally granted intervenor status to "Bangor Area Citizens Organized for Responsible Development" ("BACORD"). The order was provisional in order to allow Widewaters and the City to submit written arguments, grounded on the appellate record, on the issue of whether any members of BACORD who participated at the Board's hearings had demonstrated a particularized injury.[2] In its reply brief on appeal, Widewaters argues that the record does not demonstrate the basis for BACORD's standing.

In order to show that it has organizational standing, BACORD must show only that its members would have standing in their own right and

---

[2]When the May 1 order was issued, the record on appeal had not yet been filed, and therefore it was not possible at that time to review the record and determine BACORD's standing, which is derivative of the theoretical standing of its members. Consequently, the order that granted standing to BACORD was a provisional one and was subject to reconsideration after the record was filed.

that the interests at stake are "germane to the organization's purpose." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180, 145 L.Ed.2d 610, 627 (2000). Further, the organization's standing is predicated on independent standing of only any one of its members. *Pride's Corner Concerned Citizens Ass'n v. Westbrook Board of Zoning Appeals*, 398 A.2d 415, 416 n.1 (Me. 1979). In support of its contention that BACORD does not have standing, Widewaters relies on a letter from BACORD's counsel identifying BACORD members who participated at the Board's hearing. *See* Plaintiff's Reply Brief, exhibit A. Widewaters argues that none of those members has shown a particularized injury sufficient to confer individual standing.

The notion of "particularized injury" to environmental, recreational and aesthetic interests must be considered in light of the caselaw noted in the May 1 order. At the Board's March 20 public hearing, a BACORD member, Bob Milardo, told the Board that for recreational purposes since 1983, he has regularly used the area that would be developed or directly affected by Widewaters' project. One of the important issues considered by the Board was the effect of the proposed development on the ecology of the area. Because standing is viewed expansively in land use cases that raise issues of environmental impact, the court is satisfied that the record demonstrates affirmatively that Milardo would have standing in his own right. BACORD itself therefore has standing to participate in this proceeding.

### B. Bias of Board member

The long-standing principle of prudence encourages courts to resolve cases on grounds other than constitutional ones. *Town of Burlington v.*

4

*Hospital Administrative District No. 1*, 2001 ME 59, ¶ 19, ___ A.2d ___, ___.
Because several of Widewaters' challenges to the Board's decision
unavoidably implicate constitutional issues, the court first addresses its
claim (non-constitutional in nature) that one of the Board's member was
not free from bias.

Widewaters' initial site plan, which was filed in August 2000, *see*
note 1 *supra*, proposed development and construction within 250 feet of
the Penjajawoc Stream. After Widewaters withdrew that site plan and its
associated permit applications, the Bangor City Council was asked to
consider zoning changes in the area adjacent to the Penjajawoc Stream.
Those changes would have included an expansion of the Resource
Protection District, where development is prohibited or substantially
limited. *See* CITY OF BANGOR, MAINE, LAND USE CODE § 165-106. Although the
City Council had not acted on the proposed zoning changes when
Widewaters filed the site plan and permit applications at issue here, a
member of the Board, Frederick F. Costlow, wrote a letter to the City
Council advocating that the Resource Protection District be expanded from
75 feet to 250 feet from the stream. Widewaters' site plan filed in
February 2001 proposed development and construction at least 250 feet
from the stream (that is, outside of the area that Costlow believed should
be included in the Resource Protection District).

On this basis, at the beginning of the March 20 public hearing,
Widewaters requested that Costlow recuse himself from participating in
the proceedings. Costlow declined to do so, stating that his letter
addressed an issue that was not generated by Widewaters' applications
and that "I haven't predisposed [sic] what I've done." At least two other

5

Board members expressed their feelings that Costlow was not required to recuse.[3] Widewaters now argues that Costlow's letter exhibits a bias against the type of development that was the subject of the administrative proceeding.[4]

As part of an appeal from governmental action, allegations that a decisionmaker was biased can be pursued by means of a trial of the facts pursuant to M.R.Civ.P. 80B(d). *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240-41. Despite the availability of that procedural alternative, Widewaters has elected to limit its claim of bias to the record on appeal. *See* April 13, 2001, Order on Plaintiff's Motion to Expedite and Specially Assign at n.1. Thus, the resulting question is whether, as a matter of law, the record compels the conclusion that Costlow was biased.

The record cannot sustain such a conclusion. The record does not set out any standards or criteria that govern disqualification of Board members, and the parties have not identified any procedure established by the City by which alleged conflicts may be addressed and resolved. As a general matter deriving from concepts of due process, parties to an

---

[3]Members Fournier, who was the chair, and Lingley expressed this view. An unidentified person concurred. (The record on appeal does not indicate whether this person was a Board member, although one could draw that inference.) Member Burgoyne said simply that "[t]he issue's on the record."

[4]In his letter to the City Council, Costlow wrote, "It is my view and a view which is shared by at least some on the planning board, that this area needs far in excess of the requested 75' set-back." Apparently on this basis, Widewaters may be seen to argue here that other members of the Board, in addition to Costlow, may have been biased. At the March 20 hearing, however, Widewaters did not seek the recusal of any member other than Costlow. Thus, other claims of membership bias have not been preserved. *See Penobscot Area Housing Development Corp. v. City of Brewer*, 434 A.2d 14, 20 n. 7 (Me. 1981).

6

administrative or governmental proceeding are entitled "to a fair and unbiased hearing." *Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 902 (Me. 1993). Here, in response to Widewaters' request that Costlow recuse himself from the proceedings, Costlow represented that he was capable of impartially evaluating its proposal and permit applications. Because Widewaters has not sought a trial that would have allowed independent inquiry into this circumstance, Costlow's own statement regarding his freedom from bias is itself sufficient to defeat Widewaters' assertion to the contrary. Further, Costlow's representation of impartiality is not inherently unreasonable, because the position he expressed in his letter to the City Council is not necessarily inconsistent with the position taken by Widewaters in support of its permit applications. Thus, on this record, Widewaters has not established that the Board's decision was affected by bias.

## C.   Constitutionality of Section 165-114

Widewaters' remaining challenges on this appeal relate to either the meaning or application of section 165-114 of the City's land use ordinances, which was the controlling provision for the Board's denial of its application for a site development permit.[5] Directly or indirectly, each of those arguments raises the question of whether section 165-114 is

---

[5] In its complaint on this appeal, Widewaters included an independent claim that the Board failed to issue adequate findings in support of its denial of Widewaters' site development permit application. Widewaters has not argued this point in its written brief.

constitutional.[6] Thus, the court addresses that seminal issue.

As proposed, Widewaters' development project would be contained within the City's Shopping and Personal Service District. *See* CITY OF BANGOR, MAINE, LAND USE CODE §§ 165-101. Because the store would include a retail auto service department, and because its outdoor display or storage area would exceed 1% of the gross floor area of the building, Widewaters was required to secure approval for the project from the City's Planning Board. Any such approval would be predicated on compliance with conditions specified in the ordinances. *See id.,* §§ 165-101(D)(3), (5). Additionally, because these two elements of Widewaters' proposal were conditional uses and because the proposal would use at least 10,000 square feet of land,[7] the developer was also required to obtain a land development permit from the Board. *See id.,* §§ 165-111(A)(1), (4). A development such as this, which requires a site development plan, also requires Planning Board approval. *See id.,* § 165-113.

Section 165-114, which is at the heart of Widewaters' challenge at bar, provides in pertinent part:

---

[6]More specifically Widewaters' subordinate arguments are that the Board's concern for the ecological impact of the development caused the Board (1) to expand de facto the zoning district that immediately surrounds the Penjajawoc Stream; (2) to violate the City's comprehensive plan; and (3) to deny its application for a site development permit notwithstanding Widewaters' satisfaction of the applicable criteria. In its overarching contention, Widewaters argues that section 165-114 vests the Board with more discretion than, under constitutional principles, the Board is entitled to have. To address the subsidiary issues, the court must first determine both the extent of delegation and whether this delegation of authority was excessive. Thus, the court must consider whether the Board's authority under section 165-114 is consistent with the constitution as interpreted by the Law Court.

[7]In fact, the Wal-Mart building would be 224,000 square feet (more than 5 acres), and the outdoor square area would be an additional 14,000 square feet.

When reviewing any plan(s) for approval of a land development project under this chapter [which includes developments subject to sections 165-101 and 165-111], the Planning Board shall consider the following features and impacts before granting approval and shall determine that the proposed plan is adequate and suitable to fulfill the intents and purpose of this chapter: . . .

I. Effect on the scenic or natural beauty or the area or on historic sites or rare and irreplaceable natural areas; . . . .

On the basis of section 165-114(I), the Board denied Widewaters' application for a land development permit. Widewaters contends that this ordinance represents a constitutionally excessive delegation of legislative power to the Planning Board and is therefore unenforceable.[8]

A party who challenges the constitutionality of legislation bears the burden of establishing its infirmity. *Kosalka*, 200 ME 106, ¶ 11, 752 A.2d at 186. At least when state statutes are at issue, that burden is a "heavy" one. *Irish v. Gimbel*, 1997 ME 50, ¶ 6, 691 A.2d 664, 669.

In a series of opinions, the Law Court has defined the role played by a legislative municipal body in regulating the use of private property, and

---

[8] It does not appear that Widewaters raised this constitutional challenge below. However, neither the City nor BACORD contend that Widewaters has waived its opportunity to make the argument here. Thus, it may be that the waiver argument -- if there is one -- itself has been waived.

Nonetheless, the parties have not included in the record other provisions of the City's ordinances that appear to identify the scope of the Board's authority. *See* R. G-10 at 16504 ("General References"). Thus, the available record does not allow inquiry into whether the Board could have considered a constitutional challenge to section 165-114(I).

Additionally, in at least one case, the Superior Court and the Supreme Judicial Court considered the merits of a similar constitutional challenge to a land use ordinance, when that issue was not developed at the municipal level (-- in fact, where the municipal board had refused to consider the question). *See Kosalka v. Town of Georgetown*, 2000 ME 106, ¶¶ 7-8, 752 A.2d 183, 185. From this, the court infers that the constitutional question has been properly raised in the case at bar.

the separate role played by a municipality's administrative board in applying those regulations to a particular circumstance. When a municipality enacts a zoning ordinance, it considers the question of "[w]hether the use will generally comply with the health, safety and welfare of the public and the essential character of the area. . . ." *Cope v. Inhabitants of the Town of Brunswick*, 464 A.2d 223, 227 (Me. 1983). A municipality's legislative body, such as a city council, therefore determines "what is appropriate for the community." *Wakelin v. Town of Yarmouth*, 523 A.2d 575, 577 (Me. 1987). Through a municipal ordinance, the legislative body identifies certain "conditions under which certain [land] uses may exist. . . ." *Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d 50, 51 (Me. 1968).

Then, after those land use policies are promulgated by the legislative process, an administrative board is charged with deciding whether or not the conditions identified in the legislation (namely, the land use ordinance) have been satisfied in a particular situation. A municipal board thereby acts in a "quasi-judicial" capacity. *Wakelin*, 523 A.2d at 577. The board's function, however, is limited: its "only power is to hear and decide whether the applicant has met those factual conditions." *Id.* (internal quotations omitted). In other words, "[t]here should be no discretion in the Board of Appeals [the administrative body] as to whether or not to grant the permit if the conditions stated in the ordinance exist. That determination should be made by the legislators." *Stucki v. Plavin*, 291 A.2d 508, 511 (Me. 1972), *quoted in Wakelin*, 523 A.2d at 577.

*Wakelin, Cope* and other case authority make clear that the legislative standards embodied in the zoning ordinance must be well-

10

defined and "specific." *Cope*, 464 A.2d at 227. At least three problems arise when the zoning ordinance delegates too much discretion to the administrative tribunal. First, an ordinance that is flawed in that way permits "the Board to roam at large in policy-making." *Wakelin*, 523 A.2d at 577. This defeats the fundamental democratic principal that policy should be established by legislators. Second, "[s]uch broad delegation of power breeds selectivity in the enforcement of the law." *Town of Windham v. LaPointe*, 308 A.2d 286, 293 (Me. 1973), *quoted in Cope*, 464 A.2d at 226. *See also Wakelin*, 523 A.2d at 577 (an improperly broad ordinance "opens the door wide to favoritism and discrimination by permitting the Board to grant or deny special exceptions for reasons that are unconnected to the ordinance but that masquerade as quasi-judicial findings of fact.").[9] Third, when the ordinance invites the administrative body to set policy rather than to implement it, then the property owner is deprived of a guide that defines the manner in which the property may be used. *Kosalka*, 2000 ME 106, ¶ 11, 752 A.2d at 186; *Wakelin*, 523 A.2d at 577.

Legislative specificity and direction is particularly crucial in conditional use cases such as this, because a conditional use ordinance affirmatively allows the property owner to use the property in a way that the ordinance specifically permits. (This stands in contrast to variance ordinances, which permit a use that is otherwise foreclosed.) *See Cope*, 464 A.2d at 226-27. Here, Widewaters seeks to use its property in a way that

---

[9]Whether or not the Board acted discriminatorily or with favoritism in this case is not at issue. For that reason, the court need not and does not address such a contention. Rather, the possibility of such unfair treatment must be pointed out because it is one of the consequences of an impermissibly broad delegation of legislative authority to an administrative body, and it is therefore one of the reasons why delegation of that magnitude is impermissible.

11

the City has allowed through its ordinances. Therefore, any restrictions on that permitted use (albeit a conditional one) must be clearly expressed in the governing ordinance. *Kosalka*, 2000 ME 106, ¶ 12, 752 A.2d at 186 (". . .ordinances that establish criteria for acceptance of a conditional use must specify sufficient reasons why such a use may be denied."). *See also Cope*, 464 A.2d at 225 (noting that municipalities and subordinate bodies have no inherent authority to regulate the use of private property and that any such governmental restrictions, flowing from statutes such as 30-A M.R.S.A. § 4352, must be "sufficiently detailed" in their terms).

The court concludes that, when it is gauged against these standards, section 165-114(I) embodies an excessive -- and therefore unconstitutional -- delegation of legislative policy-making power to the Planning Board. In *Kosalka*, the Law Court considered the validity of a zoning ordinance's criterion that a conditional use "must . . . conserve natural beauty . . . ." The Court held that this standard failed to provide sufficient guidance to the administrative panel charged with applying it to a property owner's proposed use: "Neither developers nor the ZBA are given any guidance on how to interpret the 'conserve natural beauty' requirement. Instead, developers are left guessing at how much conservation is necessary, and the ZBA is free to grant or deny permits as it sees fit." 2000 ME 106, ¶ 15, 752 A.2d at 187.

Section 165-114(I) suffers from the same flaw. Indeed, the Bangor ordinance uses the same "natural beauty" language as that struck down by the *Kosalka* Court. There, the phrase "natural beauty" did not contain quantitative content that would allow predictable and objective application, and would answer the questions posed by the Court, "How

12

much destruction is okay? Or, put another way; How much conservation is required?" *Kosalka*, 2000 ME 106, ¶ 15, 752 A.2d at 187.[10]

Section 165-114(I) contains another element that, in fact, renders the scope of its improper delegation even greater than the ordinance examined in *Kosalka*. As is noted above, in *Kosalka*, as the Law Court construed the ordinance, it provided that the conditional use "*must* 'conserve natural beauty.'" 2000 ME 106, ¶ 5, 752 A.2d at 185. (Emphasis added.) The Bangor ordinance, on the other hand, required the Board only to "consider" the development's "[e]ffect on natural or scenic beauty of the area or on historic sites or rare and irreplaceable natural areas." The same ordinance also enumerates as many as fourteen other factors that the Board is required to "consider." These other factors include parking facilities, water drainage, effects of artificial lighting, traffic flow and landscaping features. The terms of section 165-114 provide no guidance whether the Board is required to balance these separate factors; whether an applicant's failure to satisfy one criterion requires the denial of the pending application; what weight is to be assigned to the specific, enumerated considerations; or any other methodology that would control

---

[10]The City argues that under *Gorham*, section 165-114(I) is constitutional. In *Gorham*, the Law Court considered a constitutional challenge to an ordinance under which a conditional use could "not adversely affect the value of adjacent properties." 625 A.2d at 900-01, n. 3. The Court concluded that this criterion provided the administrative board with adequate guidance to rule on a permit application. *Id.* At 901. On the other hand, the standard of "natural beauty" is not subject to the quantification and predictable application available under the *Gorham*-type ordinance. *Kosalka*, 2000 ME 106, ¶ 16, 752 A.2d at 187. Indeed, in *Kosalka*, the Law Court itself distinguished *Gorham* on this very basis. The same distinction obtains here.

13

the Board's assessment of a particular permit application.[11]

The introductory paragraph to section 165-114 requires the Board to determine whether a permit application "is adequate and suitable to fulfill the intents and purpose of this chapter. . . ." Section 165-1 articulates those purposes. However, that statement of purpose is broad and comprehensive. It includes, for example, the protection of the "prosperity" of the City's residents and the promotion of "orderly and beneficial development." CITY OF BANGOR, MAINE, LAND USE CODE §§ 165-1(A), (B). However, it also includes the protection of ecologically sensitive and important areas within the City. *Id.*, § 165-1(H). Thus, although section 165-114 requires the Board separately to "consider" the factors identified therein and then to assure compliance with the overarching purposes found in section 165-1, the former is not of assistance in providing meaningful guidance for the Board's separate consideration of section 165-114(I).

The court therefore concludes that section 165-114(I) is an unconstitutional delegation of legislative authority to the City's Planning Board. As such, it is violative of the due process clause, *Kosalka,* 2000 ME

---

[11]The record and the briesf illustrate the ambiguity created by the statute because they reveal varying constructions of section 165-0114(I). Member Burgoyne implicitly recognized that the development would have some effect on the immediate environment but nonetheless concluded that Widewaters was entitled to approval of its permit application. Member Costlow stated that, in his view, Widewaters was required to demonstrate that the project would have "no effect" on the area protected by the zoning regulations. In its brief on this appeal, the City construes section 165-114(I) "to proscrib[e] harm to areas of natural beauty, historic sites, and irreplaceable natural areas." The City also reads this ordinance to permit tolerance of a "*de minimis* adverse effect" or "an adverse effect." In its brief, BACORD construes section 165-114(I) to require denial of a permit for a project that will have "any adverse effect upon rare and irreplaceable natural areas."

14

106, ¶ 17, 752 A.2d at 187, and of the equal protection clause, *Wakelin*, 523 A.2d at 577. Section 165-114(I) was the only basis for the Board's denial of Widewaters' site development permit application; the Board concluded that Widewaters' application satisfied all other requirements found in the City's ordinance. As a result, this case must be remanded to the Board with instructions that it grant Widewaters' site development permit application.

The entry shall be:

For the foregoing reasons, the appeal is granted. This matter is remanded to the City of Bangor Planning Board, which shall grant Widewaters' application for a site development permit.

Dated: May 30, 2001

_____
JUSTICE, SUPERIOR COURT